(75 South. 621)

## GARDINER v. SOLOMON. (8 Div. 995.)

(Supreme Court of Alabama. April 19, 1917. Rehearing Denied May 24, 1917.)

1. MASTER AND SERVANT ⚖═301(1)—TORTS OF CHILD—PARENT'S LIABILITY.

Where the son, who was a grown man engaged in business for himself, was, at the time he ran down plaintiff's intestate, using his mother's automobile for his own personal benefit and pleasure, without her express authority and not in the interests of mother, she was not liable on the theory of respondeat superior; there being a mere implied consent growing out of the relationship and a previous use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210, 1216.]

2. PARENT AND CHILD ⚖═13(1)—DANGEROUS VEHICLES—AUTOMOBILES.

While automobiles are not regarded as inherently dangerous instrumentalities, yet if mother intrusted her automobile to her son, though not an agent or servant, who was so incompetent as to convert it into a dangerous instrumentality, causing death of plaintiff's intestate, she was liable, if incompetency was known when she permitted the use.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 145–147.]

3. PARENT AND CHILD ⚖═13(2)—TORTS OF CHILD—ALLEGATION OF INCOMPETENCY.

In an action against son's mother, an averment that son "was, and had long been, a careless, indifferent, heedless, and reckless driver of such car," was equivalent to charging that the son, who ran mother's automobile against plaintiff's intestate, was incompetent.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 148–151.]

4. PARENT AND CHILD ⚖═13(2)—INJURIES TO THIRD PERSONS—QUESTIONS FOR JURY.

Where there was evidence from which jury could infer that the son was so reckless as to render the mother's automobile dangerous in his hands, and that defendant mother, who had been informed of his incompetency, permitted him to use it, and that death of plaintiff's intestate resulted from recklessness of son, the case was properly submitted to the jury.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 148–151.]

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 197 Ala. 131.

**5. APPEAL AND ERROR ☞1040(9)—PLEADING—HARMLESS ERROR.**

Defendant cannot predicate reversible error upon court's sustaining demurrer to his special plea before amendment, where demurrer was overruled after amendment which placed no additional burden on defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4096.]

**6. APPEAL AND ERROR ☞1039(11)—PLEADING—HARMLESS ERROR.**

Defendant cannot complain that plaintiff was permitted in replication to set up subsequent negligence, which could have been proven without the replication.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4083.]

**7. PLEADING ☞30—SUFFICIENCY—INADVERTENT MISUSE OF WORDS.**

In a suit against mother, whose son, with her automobile, ran down plaintiff's intestate, that replication described son as defendant was harmless; the inadvertence being self-correcting.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 51.]

Appeal from Law and Equity Court, Morgan County; Thomas W. Wert, Judge.

Suit by Mrs. D. A. Solomon against Mrs. Cora Gardiner for damages for the death of her intestate, alleged to have been caused by an automobile belonging to Mrs. Gardiner. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The first count alleges that defendant's agent, Thomas Gardiner, wrongfully caused the death of Charlie Solomon, by wrongfully propelling, in the course of his agency, against said decedent, a powerful and ponderous automobile, the property of defendant, which defendant was, through said agent, then and there engaged in operating. (Then follow the details of the accident resulting in decedent's death.)

Count 2 alleges that plaintiff is the widowed mother of Charles Solomon, deceased, and that defendant's agent, Thomas Gardiner, wrongfully and negligently caused the death of said Charlie Solomon, by wrongfully and negligently propelling against decedent, in the course of his employment, a powerful and ponderous automobile, the property of defendant, which defendant's said agent was then and there engaged in operating in the course of his employment.

Count 3:

Plaintiff claims of defendant the sum of $15,000, for that heretofore, to wit, on or about August 21 or 22, 1915, the defendant was the owner of a motorcar of tremendous weight and great power, which she allowed her son, Thomas, to operate. The said Thomas, on the day and date aforesaid, was, and long had been, a careless, indifferent, heedless, and reckless driver of such car, so that said car in his hands was a dangerous and deadly agency, of which facts defendant had been duly informed; yet, with information of such facts, she allowed her said son to propel said car along the public streets of New Decatur, Ala., at will, and intrusted its management and operation to him, and while, on the day and date aforesaid, he was engaged in running said car along a highway, to wit, Second avenue, in New Decatur, Ala., in the very heart of the business section of said city of over 6,000 people, and in broad daylight, the said Thomas so negligently, heedlessly, recklessly, wrongfully, and indifferently conducted himself with respect to said car that he ran same against plaintiff's minor son, Charlie Solomon; and he, said defendant's said son, by means of such death-dealing instrumentality, so crushed and pushed, rolled, and dragged plaintiff's said minor son that he very soon died, and, his father being dead, plaintiff therefore sues. And plaintiff avers that at the time of said injury, defendant's said son was using said car by defendant's consent and acquiescence; she having been informed of his dangerous proclivities in connection with the same as aforesaid.

Count 4:

Plaintiff claims of defendant the sum of $15,000, for that heretofore, to wit, on or about August 21 or 22, 1915, defendant was the owner of a motorcar of tremendous weight and great power, which she allowed her son, Thomas, to operate. Said Thomas, on the day and date aforesaid, was, and long had been, a careless, indifferent, heedless, and reckless driver of such car, so that said car in his hands was a dangerous and deadly agency, of which facts defendant had been duly informed; yet, with information of such facts, she allowed her said son to propel said car along the public streets of New Decatur, Ala., at will, and procured indemnity insurance as a mode of protecting or reimbursing her against damages that might be recovered or recoverable by reason of her son's disastrous operation of said car, he being, with her consent, named on her application for such insurance, or in the policy, or in both, as the operator or one of the operators of said car, the name of the insurance company being to plaintiff unknown, and while, on the day and date aforesaid, defendant's said son was engaged in running said car along a highway, to wit, Second avenue, in New Decatur, Ala., in the very heart of the business section of said city of over 6,000 people, and in broad daylight, said Thomas so negligently, heedlessly, recklessly, wrongfully, and indifferently conducted himself with respect to said car that he ran same against plaintiff's minor son, Charlie Solomon, and he, defendant's said son, by means of such death-dealing instrumentality so crushed and pushed, rolled, and dragged plaintiff's minor son that he very soon died, and, his father being dead, plaintiff therefore sues. And plaintiff avers that at the time of said injury defendant's said son was using said car by defendant's consent and acquiescence, she having been informed of his dangerous proclivities in connection with the same, as aforesaid.

The pleas referred to are the special pleas of contributory negligence, to which demurrers were sustained before amendment; the negligence alleged being that deceased stepped off a moving street car at a place where passengers were not accustomed to alight, and so close in front of the moving automobile that it was impossible to stop same by the exercise of all means known to careful and skillful drivers of automobiles, all of which means were exercised to stop the automobile.

Replication 2 is that, after Charlie became in a condition of peril from which he could not escape, defendant Gardiner saw said peril, and after so seeing said peril, and after seeing that said Charlie Solomon could not escape, said Thomas Gardiner by prompt and reasonable efforts could have stopped,

checked, or turned aside said machine, so as to have avoided hitting said Charlie Solomon, but that he negligently failed to do so.

Eyster & Eyster, of Albany, for appellant. E. W. Godbey, of Decatur, for appellee.

ANDERSON, C. J. [1] Counts 1 and 2 proceed upon the theory of respondeat superior; that is, that the driver of the automobile in question was the agent of the defendant, and was acting within the line and scope of his authority when he ran over the plaintiff's intestate. We think that the proof utterly fails to establish these material facts, as the defendant was absent from the Decaturs at the time, there was no express authority for the son to use the vehicle at this particular time, and at most there was a mere implied consent, growing out of the relationship of the parties and a previous use of same by the son. It also appears that the son, who was a grown man, engaged in business for himself, was at the time using the car for his own personal pleasure and benefit, and in no respect in the interest of or in behalf of the defendant. Upon the undisputed facts in the case, the defendant was entitled to the general affirmative charge, upon the authority of Parker v. Wilson, 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87, which was followed and approved in the case of Armstrong v. Sellers, 182 Ala. 582, 62 South. 28. The case of Heissenbuttel v. Meagher, 162 App. Div. 752, 147 N. Y. Supp. 1087, is strikingly similar to the case at bar:

"The plaintiff, while standing in a public street, waiting for a surface car, was struck and injured by an automobile belonging to defendant and driven by his son, a young man 24 years of age. This son was pursuing his studies as a law student, and lived with his father as a member of his family. The automobile was a pleasure vehicle, kept by defendant for the use of himself and his family. His son was privileged to use it for his individual purposes, whenever he so desired. It was customary, also, for the son to act as chauffeur of the car when it was used by defendant or other members of the family. On the occasion of the accident the son had taken the car out for a pleasure drive, accompanied by several of his friends. Neither defendant nor any other member of his family, except his son, was in the party. It is evident from these facts that when the accident happened the car was neither expressly nor constructively in the use or service of the defendant, and that in driving the car the son was in no way acting as the defendant's agent. Under these circumstances, we hold that defendant is not liable for his son's negligent operation of the car."

The trial court erred in refusing the general charge for the defendant as to counts 1 and 2. This case is unlike the case of Erlick v. Heis, 193 Ala. 669, 69 South. 530, and which was differentiated from the Parker and Sellers Cases, supra. There the son was not operating the car for his sole benefit and pleasure, but was taking the defendant's wife and her guests to Birmingham.

[2, 3] While automobiles are not inherently regarded as dangerous instrumentalities, and the owner thereof is not responsible for the negligent use of same, except upon the theory of the doctrine of respondeat superior, yet there is an exception if he intrusts it to one, though not an agent or servant, who is so incompetent as to the handling of same as to convert it into a dangerous instrumentality, and the incompetency is known to the owner when permitting the use of the vehicle. Parker v. Wilson, 179 Ala. 361, 60 South. 150, 43 L. R. A. (N. S.) 87; Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351; Lynde v. Browning, 2 Tenn. C. C. A. 262; Allen v. Bland (Tex. Civ. App.) 168 S. W. 35. See, also, note as to third class, in L. R. A. 1915D, p. 691. We think the averment, in counts 3 and 4 of the complaint, that Thomas "was, and had long been, a careless, indifferent, heedless, and reckless driver of such car," was the equivalent of charging that he was incompetent. First Nat. Bank v. Chandler, 144 Ala. 286, 39 South. 822, 113 Am. St. Rep. 39. As was said in the Parker Case, supra:

"In the case of a mere permissive use, the liability of the owner would rest * * * upon the combined negligence of the owner and the driver, negligence of the one in intrusting the machine to an incompetent driver, of the other in its operation."

We do not think the counts 3 and 4 were subject to the defendant's demurrer.

[4] We also think that there was evidence from which the jury could infer that Thomas was such a fast and reckless driver as to render the machine in his hands dangerous, that his use of the machine was permissive; and that the defendant, while permitting him to use the machine, was informed of his incompetency, and that the jury could infer that the death of the plaintiff's intestate resulted from the recklessness and negligence of the said Thomas in driving the automobile. The evidence was not, of course, one-sided, as there was evidence tending to show that he was a skillful driver, that the intestate was guilty of contributory negligence, and that Thomas was not guilty of subsequent negligence. Nor was there proof of an express consent from the defendant to her son to use the vehicle upon this occasion, or that she had actual notice of his incompetency as a driver, though there were circumstances from which all these facts could have been inferred by the jury. Therefore the trial court did not err in submitting counts 3 and 4 to the jury and in refusing defendant's general charge as to the said counts.

[5] We do not think that the appellant can predicate reversible error upon the part of the trial court in sustaining the demurrers to her special pleas before amendment. The trial court overruled the demurrer to said pleas after amendment, and the amendment did not put any additional burden upon the appellant, certainly not as to those which were shortened by the amendment; and, as to those to which additions were made, the

addition merely set out facts essential to establish negligence on the part of the intestate, which was averred generally in the pleas before amendment, and which the defendant had to prove in order to establish said pleas before amendment.

[6, 7] Replication 2, to the defendant's special pleas, set up subsequent negligence on the part of the driver, Thomas Gardiner, and under our system of pleading was provable under the initial counts, and which fact would have rendered the action of the trial court in sustaining a demurrer to same harmless. But there was no impropriety in setting up subsequent negligence by way of a replication, and which was sufficiently done in replication 2, and the defendant cannot complain that she was specifically informed of facts which could have been proved under the counts without a replication. It is true the replication describes Thomas Gardiner as the defendant, but this was an inadvertence, which was self-correcting, and which would no doubt have been stricken from the replication, had it been brought to the attention of counsel for the plaintiff and the trial court.

We have considered and discussed all the points made in the brief of the appellant upon the submission of the case. For the errors above suggested, the judgment of the law and equity court is reversed, and the cause is remanded.

Reversed and remanded.

McCLELLAN, SAYRE, and GARDNER, JJ., concur.