## Brady et ux. v. B. and B. Ice Company et al.

(Decided December 18, 1931.)

ARTHUR C. GUNTHER for appellants.

WOODWARD, WARFIELD & HOBSON for appellees.

Opinion of the Court by Creal, Commissioner—Affirming.

The appellants, William Brady and Pinkie Brady, are husband and wife, and appellees are corporations engaged in the manufacture and sale of ice in Louisville.

On August 25, 1928, Mrs. Brady, on alighting from a street car at the intersection of Nineteenth and Rowan streets in Louisville, was struck and severely injured by a Ford truck which belonged to appellee, the Ridley Ice & Coal Company. This truck had been lent by the company to William Loyal in April, 1928, to be used by him for the purpose of peddling ice which he purchased from appellee companies, and he had possession and control of it from that time until after the accident occurred.

At the time of the accident, Loyal was engaged in delivering ice to customers; however, the truck was being driven by Barney Sales. As we gather from the record, appellee companies are under the same management and control, as one Mr. Boone is president of both companies and they use a storage garage in common. Loyal would purchase from either company the ice which he peddled, and prior to the time the Ridley Ice & Coal Company lent him the Ford truck, he had been furnished one by the B. & B. Ice Company.

In their joint petition filed in the Jefferson circuit court, Mrs. Brady sought to recover from appellee the B. & B. Ice Company, for the injuries she sustained in the accident, and Mr. Brady sought to recover from it for the loss of her services as a result of her injuries.

In the original petition, it is alleged that at the time of the accident, Loyal was the agent, servant, and employee of appellee the B. & B. Ice Company, in the use and operation of the truck. In their amended petition, the Ridley Ice & Coal Company is made a party, and it is alleged that it is the owner of the truck which was being driven by an agent, servant, and employee of both companies who was acting within the scope of his employment.

When the case was called for trial, appellants, over the objections of appellees, were permitted to file a second amended petition in which it is alleged that the Ridley Ice & Coal Company permitted the driver of the truck to have entire and exclusive control thereof, when he was

not competent to drive same; that the driver was a habitual addict of intoxicating liquors and under the influence of such liquors during all the time appellees permitted him to use and have the care and control of the truck, and that appellees knew, or by the exercise of ordinary care could have known, of his habits and carelessness.

From a judgment for appellees based on a directed verdict, this appeal is prosecuted.

In addition to the facts hereinbefore stated, it is shown by the proof that at the time of the accident, the truck was being driven along the street in the same direction as was the street car from which Mrs. Brady alighted. Barney Sales, who was driving the truck, testified that he attempted to bring the truck to a stop at the rear of the street car when it stopped at the intersection, and would have done so but for the fact that Loyal attempted to throw his foot on the brake, but instead put his foot upon the accelerator and caused the truck to go forward and strike Mrs. Brady; that at the time, he was driving the truck at the request of Loyal, who was intoxicated to such a degree that he was unable to drive it. The evidence clearly shows that Mrs. Brady was seriously injured and that her injuries were due to the negligent operation of the truck.

Loyal testified that at the time of the accident he was half drunk, but George Lindeman, the policeman who arrested him, testified that he was very drunk and incapable of driving the truck. He testified that he and Mr. Boone, the president of the companies, had been intimately acquainted for 15 or 20 years and that he had been buying ice from Mr. Boone or from the companies of which he was president for 10 years. Loyal further testified that he was a habitual drunkard and that the fact was known to the public generally; that it was his custom to commence drinking after he had gotten his first load of ice from the factory in the early morning; that in the course of a day, it was necessary for him to return to replenish his supply, and on some of these return trips he would be in a state of intoxication. The evidence indicates, however, that at such times he was seen only by the employee of the company who weighed and delivered the ice to him, and not by Mr. Boone or any of the other officials. He stated that Mr. Boone had warned him not to drink, but that this was in the nature of a general warning issued to all drivers. On being

asked if he were ever drinking when such a warning was given, he replied: "I was drinking some every day, . . . yes sir."

Acquaintances and business associates of Loyal were introduced as witnesses and testified as to his habits with respect to the use of intoxicants. One witness testified that he had known him for 10 years and had seldom if ever, seen him sober; that during the summer of 1928, he often saw Loyal driving the truck when he was drunk. A regular customer of Loyal's testified that he had often been drunk during business hours and while engaged in the delivery of ice.

Under the proof, the only interest of appellees in the business transacted by Loyal was the sale of ice to him. They had no control of his business or of the movements of the truck and had no share in the profits arising from his sale of ice. He was not subject to their orders in any particular. While there is evidence conducing to show that the truck was furnished to Loyal as an inducement to him to purchase ice from appellees, there is nothing further to indicate the relationship of master and servant or principal and agent; hence if liability imposes upon appellees or upon either of them, it does not, under the proof heard, arise out of either of these relations, but must be rested upon an entirely different theory.

In Blashfield's Cyclopedia of Automobile Law, vol. 2, p. 1320, sec. 5, it is said: "Something more than ownership of a motor vehicle is required to establish agency, or the relation of master and servant, between the owner and the borrower or hirer negligently operating it." Since the automobile has come into common use, much has been written on the question of the liability of an owner who intrusts his automobile to another, and there is some diversity of opinion, but there is practical agreement of authority as to the general rule that aside from the doctrine of respondeat superior, ordinarily a person who owns or controls a motor vehicle is not liable for the negligence of one whom he permits to use it. Keck v. Louisville Gas & Electric Co., 179 Ky. 314, 200 S. W. 452, L. R. A. 1918C, 654; Tyler v. Stephen's Adm'x, 163 Ky. 770, 174 S. W. 790; Doss v. Monticello Electric L. & P. Co., 193 Ky. 499, 236 S. W. 1046. See also list of cases from 20 states in 36 A. L. R., page 1138.

There is, however, a well-recognized exception to this general rule, that where the owner lends or intrusts

an automobile to a person who is incompetent to operate same or is so heedless or reckless as to render it a dangerous instrumentality when operated by him, the owner is liable if, at the time he lends or intrusts it, he knows of such person's incompetency or character and habits in that regard. Saunders Drive-It-Yourself Co. v. Walker, 215 Ky. 267, 284 S. W. 1088; Gardiner v. Solomon, 200 Ala. 115, 75 So. 621, L. R. A. 1917F, 380; Jones v. Harris, 122 Wash. 69, 210 P. 22; Elliot v. Harding, 107 Ohio St. 501, 140 N. E. 338, 36 A. L. R. 1128; Mitchell v. Churches, 119 Wash. 547, 206 P. 6. 36 A. L. R. 1132, and cases in annotation following that opinion.

The general rule arises from a recognition of the fact that an automobile is not by nature inherently dangerous as is a vicious, unruly animal, and the exception is the outgrowth of experience and common knowledge that it may and does become dangerous when negligently or recklessly operated. Mullen & Haynes v. Crisp, 207 Ky. 31, 268 S. W. 576; Tyler v. Stephen's Adm'x, supra.

If an owner lends his automobile to another under circumstances that do not warrant the application of the doctrine of respondeat superior, any liability attaching to him does so by reason of his own negligence in knowingly permitting the use of it in such a way as would probably cause injury to others. And if, when such owner intrusts his automobile to another, he knows such other person is an inexperienced, careless, or reckless driver, he is liable for the natural and probable consequences of his act. Meers v. McDowell, 110 Ky. 926, 62 S. W. 1013, 23 Ky. Law Rep. 461, 53 L. R. A. 789, 96 Am. St. Rep. 475, citing Carter v. Towne, 98 Mass. 567, 96 Am. Dec. 682; Saunders Drive-It-Yourself v. Walker, supra.

It is a matter of common knowledge and observation, if not experience, that excessive use of intoxicants either benumbs the sensibilities or so stimulates the faculties that in either event it brings about a condition interfering with the normal functioning of volitional and reflex powers, thereby rendering the user incapable of responding in action with a readiness consistent with careful operation of a motor vehicle. It is likewise a matter of common knowledge that a drunken driver is ordinarily reckless, heedless, and indifferent to the consequences of his acts; and the same care and caution that causes people generally to refuse or hesitate to enter an automobile

as either a guest or a passenger with such a driver should be exercised in intrusting such vehicle to him.

It is alleged by appellants, and not denied, that each of the appellees is a corporation, so notwithstanding some evidence to the effect that they are under the same management, we must conclude that they are separate and distinct entities.

It is further alleged and established by proof that officers of the Ridley Ice & Coal Company lent the truck to Loyal to use in his ice business, and in the absence of any proof warranting the application of the principle of respondeat superior, liability, if any, grows out of the negligence of the company lending the truck and it alone would be liable.

Wholly apart from any relation out of which imputed negligence may grow, if the Ridley Ice & Coal Company lent or intrusted its truck to Loyal and permitted him to use same when its officers knew he was intoxicated or knew that he was an addict of intoxicating liquors and given to the excessive use thereof while engaged in driving the truck, it is liable for injuries caused by his negligence due to or resulting from his use of intoxicating liquors. Mitchell v. Churches, supra, and annotations; Crowell v. Duncan, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; Blashfield's Cyc. Automobile Law, vol. 2, p. 1335.

It is urged by appellants' counsel that there is a fatal variance between the pleading and the proof, in that it is alleged that the driver of the truck was given to habits of intoxication and was drunk when the accident occurred; that the proof all relates to habits of Loyal and not to the person who at the time was driving the truck. But it must not be overlooked that the evidence shows that the truck was turned over to Loyal and that he usually drove it; that he had only temporarily abandoned the wheel to Barney Sales, and at the time of the accident he was in the seat with the driver, directing its movements and assisting or attempting to assist in its operation; and that it was his act in placing his foot upon the accelerator that caused the truck to go forward and strike Mrs. Brady.

The only question remaining to be determined is whether there is sufficient evidence to take the case to the jury as to the Ridley Ice Company. Appellants' counsel places great reliance upon the case of Saunders Drive-It-

144

Yourself v. Walker, supra. But under the doctrine announced in that case, the company cannot be held liable unless there is evidence to show that its officers knew or were possessed of knowledge of such facts as that in the exercise of ordinary prudence they could have known that Loyal was so given to habits of intoxication when engaged in his business as to render him incompetent to operate the truck with safety to himself or to others.

There is no evidence that the officers of the company ever saw or talked to Loyal when he was intoxicated. In reply to a question as to whether he ever talked to Mr. Boone while intoxicated, Loyal answered: "Well, I don't know; I guess I have." This and his answer as to whether he had been drinking when warned by Mr. Boone are the most positive and direct statements of the witness tending to show that officers of the company knew he used liquors to excess or operated the truck while intoxicated. It will be noted that these answers amount to nothing more than conclusions, guess, or surmise of the witness.

To warrant the submission of the case to the jury, there must be some evidence of probative value tending to show negligence, or from which natural inferences of such may be drawn, and finding no such evidence in the record, the judgment of the lower court is affirmed.