### Sanders v. Lakes.

(Decided Oct. 8, 1937.)

T. J. UNDERWOOD and HENRY C. COX for appellant.

L. L. WALKER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Appellee recovered of Forrest Sanders and his father, Grant Sanders, a judgment for $650 for injuries inflicted upon him about 11:30 p. m. Saturday, January 11, 1936, in a collision with a truck owned by Grant

Sanders and driven by Forrest Sanders. Grant Sanders alone has superseded this judgment and appealed.

The plaintiff, after alleging negligent operation of this truck by Forrest Sanders and his injuries as a result thereof, had alleged this in his petition as amended and filed on March 17, 1936:

"Plaintiff further states that the defendant, Forrest Sanders, * * * was a careless, reckless and incompetent driver, who frequently became intoxicated while driving said truck, and at the time of said accident he was intoxicated, reckless and incompetent, and the defendant, Grant Sanders, knew or by the exercise of ordinary care could have known that his said son was a careless, intoxicated, reckless and incompetent driver, and he negligently permitted his said son to drive said truck on the occasion complained of."

Defendants for answer categorically denied the petition and amended petition and pleaded contributory negligence which was by consent controverted of record.

The court in its instruction submitted this question by the following instruction:

"2. If you believe from the evidence in this case that Forrest Sanders was negligent as set out in instruction No. 1 and that he was at the time of such accident intoxicated and as a direct result of his being intoxicated, if you believe from the evidence that he was, such truck was caused to collide with the car of plaintiff, Lakes, and you further believe from the evidence that the defendant Grant Sanders at the time he permitted his son to use such truck knew, or was possessed of knowledge of such facts as that in the exercise of ordinary prudence he could have known, that Forrest Sanders was so given to the use of intoxicating liquors while driving the truck as to make it unsafe for him to operate the truck, then you will find for the plaintiff against the defendant Grant Sanders; and unless you so believe, you will find for defendant, Grant Sanders."

The verdict was unanimous and against both defendants.

### The Alleged Error.

The appellant, Grant Sanders, does not complain of

the form of this instruction, but contends it was error, under the evidence heard, to instruct on this subject at all, and that the court erred in overruling his motion to instruct the jury peremptorily to find for him, he having made such motion at the conclusion of the plaintiff's evidence and renewed it at the conclusion of all the evidence. Thus it is necessary that we state the evidence on this point.

### Evidence of Grant Sanders.

Grant Sanders testified ''he was a farmer, lived near Bradshaw Mills in Garrard county, owned the truck by which these injuries were inflicted; that he had on this day sent his 24 year old son, Forrest Sanders with this truck to take his mother to Cecil Humphrey's, near Mt. Hebron in Madison county; that they were expecting to return on the following afternoon, and that he told him when he got there not to get in that truck or move it until she got ready to come home; that his son was a competent and careful driver; that the son had never taken out this truck without his permission and had never taken this truck without his telling him where to go; that he had never seen his son drunk; that he had never come home drunk; that if he ever got drunk he did not know it; that he never saw him take a drink; that he did not know that he drank excessively; that he (the father) had told his son if he went to drinking he would not run that truck and his son had said he was not going to drink.''

### Copy from Cross-Examination.

''Q. Did you know he was in the habit of drinking? A. He's like you and a heap others he gets out and drinks a little along at the time.

''Q. How long had he been doing this? A. A few years, I don't know how long. He takes his dram along.

''Q. How long have you known it? A. Two or three, three or four years, I reckon.

''Q. How frequently in the last year, had you seen him when he was drinking? A. I don't know, I haven't seen him drunk, I's seen him have a dram or so.

''Q. About how frequently? A. I couldn't tell you. Maybe several months between times. Maybe three or four months.''

### What the Son Did.

The trip to Humphrey's was uneventful, but, after

nightfall, the son stole out with the truck for a lark of his own. He drove to Lancaster in Garrard county, had several drinks there, then went to a dance in Madison county, some distance from a place called Buckeye, and after a short stay at the dance he and three other parties left, going in the direction of Lancaster. All of them were drinking, and Forrest Sanders was so drunk he wanted to sleep it off, so he intrusted the driving of the truck to Hogan Sparks and went to sleep. When they got to Buckeye, Hogan Sparks aroused young Sanders, he took the wheel, and Sparks got out there and young Sanders started in the direction of Lancaster, but had only gone a short distance when he drove this truck into a car he was meeting and caused the collision in which appellee was injured.

### Our Conclusion.

Appellee does not rest his case upon doctrine of respondeat superior, for it is perfectly clear young Sanders was then not rendering any service to his father, but apparently relies upon the principle that, when one of two innocent parties must sustain a loss that has resulted from an act of a third party, the loss must fall on him, who put it into the power of the third party to cause the loss. Therefore appellee contends Grant Sanders must answer to him for his loss because he let his son even start out from home in this truck, when he (Grant Sanders) knew, or had enough information regarding the drinking habits of his son to put him upon inquiry that would have revealed to him, that his son was in the habit of getting drunk, and was, when drunk, a reckless, incompetent, and dangerous driver, as all drunks are.

Grant Sanders acquired this truck in August, 1935; whether it was then new or was a secondhand machine does not appear. It is well known that all modern automobiles are fitted with locking devices so that they cannot be operated without the key to the particular machine, but whether this machine was so equipped does not appear, and, of course, there is no discussion of the effect of intrusting the key to the son or why the father, if he were suspicious of his son, did not extend his instructions to his son and direct him to give the key, if there were one, to his mother upon arrival at Humphreys'. It was shown the son had previously had two wrecks, but it is not shown the father made the repairs made necessary by those wrecks or had knowl-

edge of whether his son's intoxication or what else had caused them.

It is true that in Robinson & Son v. Jones, 254 Ky. **637,** 72 S. W. (2d) 16, 19, we said:

"It is known of all men that the drinking of intoxicating liquor, though it be not done to the extent of actual intoxication, begets a spirit of recklessness, and is responsible for numerous accidents."

No one disputes that, nor is there any question here but what this wreck was caused by the son's intoxication, but a plaintiff must prove what he wants the jury to find, and there is no proof that Grant Sanders had such knowledge of the drinking habits of his son as to charge him with a knowledge of his recklessness when drunk or even when he ever got drunk. The son was on a lark of his own when this happened, and there is not enough evidence to charge Grant Sanders with notice that such might happen.

As to automobiles hired, loaned, or intrusted to others, we reversed a judgment in Saunders-Drive-It-Yourself Company v. Walker, 215 Ky. 267, 284 S. W. 1088, 1089, and said:

"The true rule seems therefore to be that the owner of the car in such cases is not liable unless he knows, or under the facts known to him in the exercise of ordinary care should know, that the person hiring the car is incompetent to drive it."

Plaintiff must bring himself within that rule, and the question is how much evidence must he have to bring himself within that rule.

"Verdict should be directed peremptorily only if, after admitting every fact shown by plaintiff's evidence to be true as well as all reasonable inferences that can be drawn therefrom, he has failed to establish his case." North American Accident Insurance Company v. West, 245 Ky. 316, 53 S. W. (2d) 692.

The case of Crowell v. Duncan, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425 is a well-considered case and quite like this one, but that case was finally rested on the theory that the servant was then in the service of his master.

Our opinion in Bray-Robinson Clothing Company v. Higgins, 210 Ky. 432, 276 S. W. 129, involved a driver's drinking, but was rested upon an entirely different idea.

from this case, and was sharply criticized in Cleveland Nehi Bottling Company v. Schenk (C. C. A.) 56 F (2d) 941.

The case of Brady v. B. & B. Ice Company, 242 Ky. 138, 45 S. W. (2d) 1051, is the leading case in Kentucky on this question. In that case it was held that the B. & B. Ice Company was not liable unless it lent or intrusted its truck to Loyal (the driver at the time of the accident) and permitted him to use same when its officers knew he was intoxicated or knew that he was an addict of intoxicating liquors and given to the excessive use thereof while engaged in the driving of the truck.

On the trial of the case it was testified to by Loyal (the intoxicated driver) that he was half drunk at the time of the accident. A policeman testified that he was very drunk and incapable of driving a truck. Loyal also testified that he had been drinking to the extent of being an habitual drunkard; that he was intimately acquainted with the president of the company and that he had been buying ice from him for a period of 10 years; that the fact of his habitual drunkenness was known to the public generally; that it was his custom to commence drinking after he had gotten his first load of ice from the factory early in the morning; and that it was his custom to replenish his supply at different times during the day and on some of his visits or return trips he would be in such a state of intoxication.

The evidence in that case as to the knowledge of the intemperate habits of Loyal was much stronger than the evidence here of this father's knowledge of the intemperate habits of his son, yet this court affirmed the action of the trial court in directing a verdict against the Bradys, and hence we must hold it was error in this case to overrule the motion of Grant Sanders for a directed verdict and error to give instruction No. 2. Other cases involving questions similar to the one in this case are: Mitchell v. Churches, 119 Wash. 547, 206 P. 6, 36 A. L. R. 1132; Fisher v. Fletcher, 191 Ind. 529, 133 N. E. 834, 22 A. L. R. 1392; Jones v. Harris, 122 Wash. 69, 210 P. 22. See notes in 68 A. L. R. 1008, and 100 A. L. R. 920.

Judgment reversed.