## Owensboro Undertaking & Livery Ass'n v. Henderson

(Decided March 15, 1938.)

O. L. FOWLER for appellant.
RIDLEY M. SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The appeal is from a $1,655 judgment for personal injuries.

Appellant, Owensboro Undertaking & Livery Association, rents cars to others who drive themselves. About 2:30 o'clock on the afternoon of September 24, 1936, appellant rented one of its cars to James Wallace Wimsatt. While crossing the street that night, appellee was struck and injured by the car then being driven by Wimsatt. A recovery was sought on the ground that the collision was due to Wimsatt's negligence, occasioned by the fact that he was intoxicated, and that appellant at the time of the hiring knew, or in the exercise of ordinary care should have known, that Wimsatt was intoxicated and unfit to operate a motor vehicle. It is unnecessary to detail the circumstances attending the accident. Appellant's principal contention is that the evidence that it knew, or in the exercise of ordinary care should have known that Wimsatt was intoxicated at the time he ran the car, was not sufficient either to take the case to the jury or to sustain the verdict. On this question we have the following evidence on behalf of appellee: About 10:30 a. m. on the day of the accident Wimsatt went to a drug store and purchased a pint and a half of gin. He then proceeded to Jeff Hodge's restaurant near the Ohio river bank in Owensboro, and he, a boy by the name of Harris, and another boy by the name of Timbrook drank the gin. After disposing of the gin, Wimsatt and Harris decided to hire a car, and at about 2 p. m. left Hodge's restaurant for that purpose and proceeded up the street toward appellant's place of business. J. D. Hodge saw Wimsatt both before and after he hired the car. Before the hiring, Wimsatt was drunk and barely able to walk. After the hiring, his condition was worse. He could tell by looking at Wimsatt and watching his walk and actions. After leaving Jeff's place, they met Nolan Allen about 2:30 p. m. and Allen says that Wimsatt

had been drinking and he guessed was about half drunk. On the other hand, appellant's evidence is as follows: Wimsatt admitted that he told N. C. Howard, appellant's manager, that he was an experienced driver and did not drink. Mr. Howard says that he asked the boys if they drank and Wimsatt said, "No sir, I don't drink," and the other boy said, "I drink, but I have not had a drink." Howard was corroborated by J. W. Allen, C. H. Reed, and Miss Lettie Gabbert, who say they were present and heard what occurred. The same witnesses also say that they observed the boys and saw nothing in their conduct or speech indicating that they had been drinking.

Automobiles are not regarded as dangerous instrumentalities, and, ordinarily, the owner who intrusts his car to another is not liable for the latter's negligence; but as such machines are dangerous instrumentalities in the hands of an incompetent driver, the owner is liable if he knows, or under the facts known to him in the exercise of ordinary care should know, that the person driving the car is incompetent to drive it. Saunders Drive-It-Yourself Company v. Walker, 215 Ky, 267, 284 S. W. 1088; Brady v. B. & B. Ice Company, 242 Ky. 138, 45 S. W. (2d) 1051. Appellant insists that the evidence was insufficient to bring the case within the above rule. Not only is it claimed that appellant was not chargeable with knowledge of Wimsatt's incompetency, but it is pointed out that not only did Wimsatt himself acknowledge that he told Mr. Morgan that Mr. Howard did not drink, but that all those present heard him make the statement; and also said that there was nothing in his appearance to indicate that he was drinking. From this it is argued that the evidence is all one way, and conclusive of the question of knowledge. It is true that appellant was not chargeable with knowledge of Wimsatt's intoxication, but, as pointed out in Saunders Drive-It-Yourself Company v. Walker, supra, a person is held to know what a person of ordinary prudence under the facts known to him would know. Therefore, if as a matter of fact Wimsatt was intoxicated at the time of the hiring, and his condition was apparent to a person of ordinary prudence, appellant's officials will be held to have had knowledge thereof, even though they were assured by Wimsatt that he had not been drinking. That being true, evidence that Wimsatt was actually drunk both

before and after the hiring was sufficient not only to take the case to the jury but to sustain the verdict.

Another ground urged for reversal is that the proof of the permanency of appellee's injuries was not sufficient to authorize an instruction for the permanent impairment of appellee's ability to earn money. The case turns on whether there was substantial evidence that appellee's injuries were permanent. The record discloses the following situation: Appellee, who was 75 years of age, was thrown to the asphalt street and suffered a concussion of the brain. His head was split open by a wide cut about the size of the hand, and deep enough to reach the skull. His scalp was left dangling over the back of his head. It was necessary to take between fifteen and twenty stitches inside his scalp and nine stitches on the outside to close the wound. In addition to the wound on his head, appellee received several bruises upon his back, upon his hips, his arms, his knee, and his hand. He also had a sprung wrist and thumb. According to his evidence, he suffered and continues to suffer a great deal of pain. He was in the hospital for one week and was then confined to his bed at home for about two weeks. After that, he went to bed for a while nearly every day. Prior to the accident, appellee was able to labor and perform chores about the house. Since that time, he has not been able to walk properly for any distance or do any work. When it is remembered that appellee was 75 years of age, that his injuries were very severe, that he could work and walk all right before the accident, but can do no work and hardly walk at all now, we think there was sufficient evidence of the permanency of his injuries to authorize the instruction complained of, but even if we entertained a doubt as to the propriety of the instruction, we would not be inclined to reverse for the reason that the damages awarded were no more than sufficient to compensate appellee for his mental and physical suffering, which is shown to have been very severe. Codell Construction Company v. Steele, 247 Ky. 173, 56 S. W. (2d) 955; Consolidated Coach Corporation v. Hopkins, 228 Ky. 184, 14 S. W. (2d) 768; Chambers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363; Louisville & Nashville Railroad Company v. Gayle, 204 Ky. 142, 263 S. W. 763.

Judgment affirmed.