## Hendricks v. Garst.

November 10, 1950.

A. J. Bratcher, Judge.

Meredith and Iler & Logan for appellant.

Russell O'Neill for appellees.

JUDGE HELM—Reversing.

Appellee, Charles Garst, alleged that Woodrow Hendricks, infant son of appellant, J. D. (Jim) Hendricks, with the consent and permission of his father, used his father's Ford pickup truck, a truck permitted by appellant to be used for the convenience and pleasure of his family; that on August 23, 1947, he had parked his 1940 Packard automobile "adjacent on a public highway in Muhlenberg County * * * near Briar Creek Church"; that Woodrow Hendricks drove appellant's truck in a reckless and negligent manner at an excessive rate of speed, without keeping a proper lookout and in total disregard of other persons, and collided with appellee's car. Appellee asked for $1,000 for damages to his car, and $150 for the loss of the use of it.

Appellant answer pleading contributory negligence; that appellee's car was at the time parked at night upon the main traveled portion of the highway, not a city street, without any lights or other danger signals. In his counterclaim appellant asked for $250 damages to his car.

At a trial the jury found for appellee in the sum of $650. Appellant appeals from the judgment entered on that verdict, urging that: (1) Woodrow Hendricks was an adult not driving the truck on a family purpose or mission; (2) the son was not driving the truck on the occasion of the accident with his father's permission; (3) appellee's car was parked in violation of KRS 189.450; (4) the court's instructions as to Woodrow's being intoxicated were erroneous; and (5) the court should have directed a verdict for appellant.

The evidence shows that Woodrow was born August 22, 1927, and was 20 years of age at the time of the accident. He had been in the armed services but had returned 22 days before the accident and was living with his father at the time of the accident.

Appellant states that his son had driven his truck on the farm, but had never driven it on the highway until the time of the accident, and that he was not driving it then with his consent; that he did not authorize him to and did not know that he was going to take it out on the highway on that occasion; that the truck was a farm truck, used for farm hauling and for bringing supplies to the farm. Asked what time Woodrow left home that day, appellant said about 3:15 p. m. Asked if he made

any effort to keep Woodrow from taking the truck away, he answered, "I didn't have anything to catch him in." He said it was about a mile from his home to the place where the accident occurred. Asked if Woodrow had been driving the car after he came back from the Army, appellant answered: "He had not, unless he asked me, and he would drive it there at home." Appellee and his father-in-law, A. P. Hill, state that appellant, on the day after the accident, told him that "Woodrow had been using his truck to drive places ever since he came back from the Army." Appellant denied making this admission. This testimony was sufficient to take the case to the jury under the family purpose doctrine.

Appellee states that he went to the scene of the accident shortly after the collision. Woodrow was sitting in the sheriff's car. "Woodrow was drunk," he was able to determine that "from the way he talked." The sheriff stated that he found a whisky bottle, a "fifth," about one-sixths full of whisky, in the truck. The sheriff admitted he had testified on the examining trial of Woodrow, and that he may have stated there, "I couldn't smell any liquor on Woodrow's breath and I could not say he was drunk." A deputy sheriff says that on an 18-mile drive with Woodrow to Greenville following the accident he did not smell any odor like whisky or notice any other symptoms of drunkenness and that he could not say he was drunk. He admits that at the examining trial he stated he was either drunk or knocked out.

Appellant says he had left a bottle with about three inches of whisky under the seat of the car about four days before the accident; he "just never had taken it out from under the seat." He says he never knew of Woodrow's drinking before the accident. He never drank before he went into the Army and hasn't since he came back. There was no proof that appellant knew of his son's drinking, or plea that he did. Other witnesses testified that Woodrow's reputation for sobriety was good.

The court instructed the jury:

"1. * * * if you further believe that Woodrow Hendricks was driving the truck at the time and place of the accident in a reckless manner on account of being then and there under the influence of intoxicants and

if you further believe he was in the habit of getting under the influence of intoxicants for some time prior to the accident, and that his father, J. D. Hendricks, knew or had reasonable cause to know of the habits of his son, then he, J. D. Hendricks, is liable for the acts of his son while running said truck under the influence of intoxicants, * * *.

"2. * * * The law places the duty on the owner of a motor vehicle to use due care in preventing such use when the owner knows, or has reason to know that one who has been operating same is addicted to intoxicants. * * *.

"* * * and if you further believe from the evidence that J. D. Hendricks knew or had reasonable cause to believe that his son was addicted to intoxicants, then he owed to the plaintiff and the public the duty of exercising due care to prevent the use of said truck by his son, then you will find for the plaintiff, * * *."

These instructions seem to have been taken from Crowell v. Duncan, 145 Va. 489, 134 S.E. 576, 50 A.L.R. 1425. See, Stanley's Instructions, sec. 137. A similar instruction was given in Sanders v. Lakes, 270 Ky. 98, 109 S.W.2d 36. In the Sanders' case the pleading of Lakes is set out. Here there was no such pleading, and if there had been the evidence was not sufficient to take the case to the jury on that question. It follows that the giving of the above instructions was in error.

Appellee admitted that the left side of his car was parked with its left wheels on the highway—about 18 inches on the highway—the right wheels on the shoulder of the road. For appellant it is shown that appellee's car occupied about one-fourth of the road, the road being 18 to 20 feet wide. It is shown that the parked car had no rear lights, or any lights or signals to warn of its position; that it was parked at night on a state highway, not in any city.

In Bradley v. Clarke, 219 Ky. 438, 293 S.W. 1082, 1084, in discussing KS sec. 2739g-48, now KRS 189.450, we said: "Apparently this section relates to the stopping of a motor vehicle for the purpose of making repairs or taking on or discharging passengers, but the purpose of the statute undoubtedly was to prevent any person from stopping a motor vehicle and leaving it

standing on a main traveled portion of any public highway."

A part of Instruction No. 3, as given by the court, appears to have been omitted. On that account we are unable to say whether or not the instruction as given was correct. If there should be another trial and the evidence on this point should be substantially the same as on the former trial, a proper instruction should be given in keeping with KRS 189.450 as interpreted in Bradley v. Clarke, supra.

The judgment is reversed for proceedings not inconsistent with this opinion.