## ESTES v. GIBSON.

Court of Appeals of Kentucky.
May 1, 1953.

James W. Smith, Glenn W. Denham and Elizabeth Gillis, Middlesboro, for appellant.

Robert J. Watson, Middlesboro, for appellee.

STANLEY, Commissioner.

The case is of first impression in this court. The question is whether a parent who purchased an automobile for an adult son, known by her to be an inebriate and drug addict, may be held answerable in damages to a third person injured by the son's negligent operation of the car. The claim of liability is predicated upon the principle of legal responsibility for entrusting an automobile, as a potentially dangerous instrumentality, to an incompetent driver.

The petition against the appellee, Mrs. Wade H. Gibson, and her son, Wm. P. Tinsley, charges that he negligently ran the automobile into a gasoline pump and caused an explosion which showered the plaintiff, Charles Estes, with burning gasoline and severely injured him. The plea of negligence of the mother is stated in summary. Having knowledge, actual or constructive, that her son "by reason of his physical and mental condition and by reason of his habits of insobriety and his addiction to the use of hypnotic drugs and narcotics was * * * a careless, reckless and incompetent operator of any motor vehicle", the mother "carelessly and negligently purchased for and placed in the possession of her said son and co-defendant herein, William Percival Tinsley, the automobile and permitted and allowed him to operate the same." The title to the automobile was in the son.

Mrs. Gibson's demurrer to the petition was sustained and it was dismissed as to her and the appeal prosecuted.

The legal principle relied upon by the appellant is thus stated in Restatement of the Law of Torts, Volume 2, Sec. 390:

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or from facts known to him should know to be likely because of his youth, inexperience or otherwise, to use it in a manner involving unreasonable risk of bodily harm to himself and others whom the supplier should expect to share in, or be in the vicinity of its use, is subject to liability for bodily harm caused thereby to them."

*Comment b.* notes the analogy to as well as the distinction between this and Sec. 307, which deals with the use of an instrumentality which is known or should be known to be dangerously improper for the use to which it is put, while this Sec. 390 deals with supplying a chattel to a person incompetent to use it safely, irrespective of whether the chattel is to be used for the supplier's purposes or for the purpose of him to whom it is supplied. It is further noted that in either case "the actor may not assume that human beings will conduct themselves properly if the facts which are known or should be known to him should make him realize that they are unlikely to do so." And in *Comment c.* it is stated that if "the person to whom the chattel is supplied is one of a class which is legally recognized as so incompetent as to prevent them from being responsible for their actions, the supplier may be liable for harm suffered by him, as when a loaded gun is entrusted to a child of tender years." However, the various explanatory illustrations show the broad and abstract statement of the rule has its limitations. The illustrations are confined to cases of agency and bailment, as by permitting the use of, lending or hiring an automobile or other potential or inherently dangerous instrumentality.

Our cases with respect to liability under such circumstances or relationships for injuries naturally and probably resulting from negligence of an intoxicated or otherwise unfit driver of an automobile are in accord. Consistent with the rule and reasoning of the decisions generally, our opinions rest upon the combined negligence of the owner or controller in furnishing or entrusting the machine to a known incompetent or incapable driver and of the driver in its operation, and do not rest upon any imputation of negligence. Saunders Drive-It-Yourself Co. v. Walker, 215 Ky. 267, 284 S.W. 1088; Brady v. B. & B. Ice Co., 242 Ky. 138, 45 S.W.2d 1051; Sanders v. Lakes, 270 Ky. 98, 109 S.W.2d 36; Owensboro Undertaking & Livery Association v. Henderson, 273 Ky. 112, 115 S.W.2d 563. See also 5 Blashfield, Cyc. of Auto.Law, Secs. 2924, 2927; 4 Berry on Automobiles, Secs. 710, et seq.; 5 Am.Jur. Automobiles, Sec. 355; 60 C.J.S., Motor Vehicles, § 431. The Maryland court has held the rule applicable not only to the owner of an automobile but also to one who has the right to permit or the power to prohibit the use thereof—a father not having prevented an incapacitated son from driving a car registered in the name of his mother. Rounds v. Phillips, 166 Md. 151, 167, 170 A. 532; second appeal, 168 Md. 120, 177 A. 174. And the Louisiana court held it applicable to a dealer who loaned his dealer's license plates

to. a buyer of an automobile whom he knew could not drive it, and without which plates the buyer would not have been permitted to operate the car on the street. The dealer was held to be liable for a death resulting from the buyer's negligent operation. Toole v. Morris-Webb Motor Co., La.App., 180 So. 431.

But this case is different. The alleged unfit and negligent driver of the car was the sui juris owner. The relationship of parent and child was but an incidence. There was no legal relationship, such as agency, bailment or the like, even in their broadest aspect. The vicarious legal liability of one person for the tortious conduct of another in which the former had no part ordinarily must rest on some such relationship. But this case rests on primary fault in the mother. To place responsibility upon a donor of an automobile to one who may or may not on a particular occasion be incapacitated to drive it could lead to placing such responsibility also upon the seller of a car to such person, or even upon one who sold him the gasoline being used to operate it. We have no statute to that effect, but we do have a statute, KRS 186.590(3) which declares that "any person who gives or furnishes a motor vehicle" to a minor under eighteen years of age shall be jointly and severally liable with him for damages caused by his negligent driving of the machine. The constitutionality of the original Act was vigorously assailed in Ingram's Adm'r v. Advance Motor Co., 283 Ky. 87, 140 S.W.2d 840, which was an action against a dealer who had sold a car to a fifteen-year-old minor and he had wrecked it and caused the death of his guests. Disposition of the case did not require the court to pass on the constitutionality of the Act, for it was held not to apply to the seller of the automobile. While liability under general tort law appears not to have been directly considered, it was held the petition did not state a cause of action against him. It may be observed that in a case arising after the adoption of the Revised Statutes, the statute was held to cover a garage employer of a seventeen-year old boy who was guilty of negligent operation while testing a car before delivering it to the owner. Falender v. Hankins, 296 Ky. 396, 177 S.W.2d 382. It may be further observed that the same statute, KRS 186.590, and KRS 186.470 qualify the right of a minor under eighteen years of age to have an operator's license, and KRS 186.440(4) denies such license to "An habitual drunkard or drug addict." However, in the absence of a plea to the contrary in the present case, we may presume that the defendant's son, Wm. P. Tinsley, had been issued such a driver's license, which would indicate that the state, through its officers, sanctioned his ownership and right to drive the automobile involved.

We consider cases from other jurisdictions.

In a memorandum opinion, an intermediate court of New York ruled that a complaint against a father alleging that he had bought an automobile for his adult son whom the father knew to be an epileptic, stated a cause of action for damages resulting from his wrecking the car when he had an epileptic fit. The sole authority cited, and that without comment, is Sec. 390 of the Restatement of the Law of Torts, which we have quoted above. Golembe v. Blumberg, 262 App.Div. 759, 27 N.Y.S.2d 692. And a trial court following that case held a complaint against a father who had given an automobile or funds with which to purchase it to a son known by him to have reckless, dangerous and wanton habits and a tendency to overindulge in intoxicating liquors, stated facts sufficient to constitute a cause of action. Bugle v. McMahon, Sup., 35 N.Y.S.2d 193. But the Appellate Division reversed the decision and held the complaint was not sufficient because it failed to allege any causal connection between the accident and any act or conduct of the father, and, furthermore, that the act of the father was as consistent with non-liability as with liability. Bugle v. McMahon, 265 App.Div. 830, 37 N.Y.S.2d 540.

Closest in point of fact and of law is Shipp v. Davis, 25 Ala.App. 104, 141 So. 366, 367. A father bought an automobile and gave it to his son, who was over twenty-one years old, knowing at the time that his son used intoxicating liquors to excess. It was sought to hold the father liable for

damages resulting from the son's negligence in operating the car. The court held there was no liability on the part of the father. Its pertinence justifies extended quotation from the opinion.

·"In the absence of an allegation of relationship constituting a legal control of Jack Shipp by Dr. M. G. Shipp, so as to bring into action the doctrine of respondeat superior or the maxim qui facit per alium facit per se at the time of the accident, Jack Shipp would be liable for his own personal negligence which is the proximate cause of an injury, but the liability would not extend and attach to Dr. M. G. Shipp, who gave him the automobile with a knowledge at the time of the gift that Jack was an incompetent driver, and although he might have known, at the time of the accident complained of, that Jack was still incompetent as a driver. 45 Corpus Juris, 877 (309) A; 42 C.J. 1075, note 26. As was held in Gardiner v. Solomon, 200 Ala. 115, 75 So. 621, L.R.A.1917F, 380, and in many other cases in this and other states (42 C.J. 614, note 95), automobiles are not classed with dangerous instrumentalities, and, while in the hands of an incompetent driver an automobile may become a dangerous machine and a menace to others, if it should be held that an automobile could not, without assuming liability for negligent or incompetent driving, be sold or given to a person not having sufficient knowledge or training ·to drive the car, it would be carrying the doctrine of concurrent liability far beyond any decision coming to our knowledge. Whether by a gift or a sale when an automobile is placed in the possession and control of a person, sui juris, such transfer passes the title to the buyer or donee, and thereafter responsibility for its operation rests with such buyer or donee. If, however, at the time of delivery of possession and control, the receiving party was by reason of intoxication or other cause incapacitated from driving the machine with reason-

able safety to the public, a different rule would apply."

This seems to us to be a reasonable conclusion.

On the point of causation, considerations in themselves or in connection with one another which are important in determining whether the giving of the automobile by the mother was a substantial factor in bringing about the injury are, as in cases generally, the lapse of time and the number, series and effect of intervening factors or events, not in continuous and active operation and for which the mother was not responsible. Restatement, Law of Torts, Sec. 433, 1948 Supplement; Cf. Louisville & N. R. R. Co. v. Stephens, 298 Ky. 328, 182 S.W.2d 447, 454. The record does not show what time intervened between the gift of the car and the son's alleged negligent use of it. Under the rule of construing a pleading unfavorably rather than favorably to the pleader we must presume it was not a short time. It may have been a year or more during which the son ran his car without an accident. Nor is it alleged that the son was at the time of the accident under the influence of intoxicants or drugs. In addition to the general plea of negligence in operating the automobile at the time and of the consequences, it is stated only that "by reason of his physical and mental condition and by reason of his habits of insobriety and his addiction to the use of hypnotic drugs and narcotics [the son] was, at all times mentioned herein, ·a careless, reckless and incompetent operator of any motor vehicle."

To impose legal liability there must always be a reasonably close causal connection between an act and the resulting injury. The vicarious liability of an owner or controller for putting an automobile, which is not in itself inherently a dangerous instrumentality, in possession of another person known to be habitually unfit to drive it, with the foreseeable and probable consequences that he will hurt somebody, is at most a secondary liability. The doctrine ought not to be extended where the party sought to be charged had no control over

the machine and the other party actually committing the injurious wrong was the owner, sui juris. In addition, and ordinarily, as here, the causation is too tenuous and too remote. There are too many probable and imponderable intervening events and conditions between the gift of the car and its negligent operation by the owner-driver.

We are of opinion, therefore, the trial court correctly adjudged the petition states no cause of action against the appellee.

Judgment affirmed.

STEWART, MILLIKEN and DUNCAN, JJ., dissenting.

DUNCAN, Justice (dissenting).

I am unable to concur in the views of the majority of the Court as expressed in the opinion.

Although an automobile is not considered as dangerous per se, it is one of the most dangerous instrumentalities yet invented when placed in the hands of a dangerous and reckless driver or one whose senses have been dulled by drink or drug.

The majority opinion recognizes the rule set out in Restatement of the Law of Torts that one who supplies a chattel to another, knowing that the person to whom it is supplied is likely to use it in a manner involving unreasonable risk or bodily harm to another, is liable for damages arising from the use of the chattel in a manner which might have been anticipated.

The rule has been applied in Kentucky in instances where an owner lends his automobile to a known incompetent driver. In Brady v. B. & B. Ice Co., 242 Ky. 138, 45 S.W.2d 1051, 1053, the Court said:

"If an owner lends his automobile to another under circumstances that do not warrant the application of the doctrine of respondeat superior, any liability attaching to him does so by reason of his own negligence in knowingly permitting the use of it in such a way as would probably cause injury to others. And if, when such owner intrusts his automobile to another, he knows such other person is an inexperienced, careless, or reckless driver, he is liable for the natural and probable consequences of his act."

The majority opinion erroneously assumes that liability is dependent upon some legal relationship, such as agency or bailment. The authorities make it clear that liability in such instances does not rest upon the fact of ownership but upon the combined negligence of the owner in entrusting the machine to an incompetent and reckless driver and of the driver in its operation.

I am unable to discern a reasonable basis for distinction in the negligence of one who lends his car and one who gives a car to a known incompetent or reckless driver. If there is a distinction, the more reasonable view would suggest that one who gives an automobile to a known incompetent driver, placing in him the power to use it at any and all times, drunk or sober, sane or insane, is more negligent than one who merely lends the vehicle for one specific occasion.

Under the majority opinion, the appellee, simply because she had title to the car transferred to her son, is placed in a position where a cause of action cannot be stated against her. In doing so, I think the opinion draws a distinction without a difference

I am authorized to say that STEWART and MILLIKEN, JJ., join with me in this dissent.