Argued November 2, 1971, affirmed March 1, 1972

STUART, *Appellant, v.* KELSAY, *Respondent.*

494 P2d 249

*Donald A. Loomis,* Eugene, argued the cause for appellant. On the brief were Jack A. Gardner, and Jaqua, Wheatley & Gardner, Eugene.

*Paul D. Clayton,* Eugene, argued the cause for respondent. With him on the brief were Luvaas, Cobb, Richards & Fraser, Eugene.

BRYSON, J.

This is a wrongful death action for the benefit of the estate of the decedent Larry Gene Williamson against the estate of Daniel Walter Nichol, deceased (ORS 30.020).

Williamson and Nichol, both minors, were in an automobile at the time it left the road at a high rate of speed and hit a tree. The car disintegrated and both died as a result of the accident. The jury returned a verdict for the defendant. Plaintiff appeals.

A paramount issue in the case was which occupant, Nichol or Williamson, was driving the vehicle at the time of the accident. Plaintiff contended Nichol was driving. Defendant contended Williamson was driving. There were no witnesses to the accident, which occurred at approximately 1:00 a.m. on Coburg Road, between Eugene and Coburg, Oregon.

Plaintiff contends that the court erred in admitting, over objection, a medical examiner's report on blood alcoholic levels in the bodies of defendant's and plaintiff's decedents. The reports showed as to Nichol, "Alcohol—none detectable," and as to Williamson,

"Alcohol—.08." The objection was that such evidence was immaterial.

The young men had spent the afternoon and evening of the day preceding the accident in the company of each other. They had visited the home of Cherri Lyon in the evening and left there at approximately 12:30 a.m., shortly before the accident. Miss Lyon testified that Nichol was driving Williamson's car when they left her home. Decedent Williamson and his mother were joint owners of the vehicle and decedent was paying the bank that held a securing interest. A police officer, who investigated the accident, testified that he drove his car from the scene of the accident to the Lyon residence in nine minutes in moderate to heavy traffic, obeying all speed zones. No witness could give the exact time the decedents drove away from the Lyon residence nor the time of the accident. The evidence further discloses that neither Nichol nor Williamson had consumed any alcoholic beverage during the afternoon or while at the Lyon residence. The issue was which occupant was driving the car at the time it left the road.

The evidence was that the car was driven at a high rate of speed, in a reckless manner, and that it went out of control, rolled over, and struck a tree. The consumption of alcoholic beverage is a common cause of reckless driving. *Brady v. B & B Ice Co.*, 242 Ky 138, 45 SW2d 1051 (1932).

> "A condition of intoxication by alcoholic liquor, as involving a peculiar condition of the body and faculties, may be of probative value as showing that the person could or could not do the act in question [note and citations omitted]." 1 Wigmore, Evidence (3d ed) 514, § 85.

■ The evidence of alcoholic blood level was also

relevant, in light of the elapsed time element and lack of drinking prior to departing the Lyon home, to negate the inference created by the testimony of Miss Lyon that Nichol was driving the vehicle. 29 Am Jur 302, § 252. The court did not err in admitting the evidence.

■ Plaintiff also assigns as error the court's receiving in evidence, over plaintiff's objection, certain evidence pertaining to the decedent having "had some difficulty with the law." The evidence was received while defendant was cross-examining two of plaintiff's witnesses. The plaintiff called several witnesses showing decedent Williamson's good physical, mental and moral characteristics, and his ability to earn money, to prove damages to the estate of deceased. Evidence of such is relevant to the issue of damages in a wrongful death action. 22 Am Jur 2d 717-18, Death § 152, 25A CJS 1020 *et seq,* Death § 123. The plaintiff called Bob Downing, Williamson's school principal-teacher and basketball coach, who testified generally that Williamson had no disciplinary problem; that he was active in athletics, an above average citizen, and that he got along well with fellow students. On cross-examination, the record discloses the following:

"Q   Did you continue to know him after he got away from you? Did you continue to watch him and see what he was doing as a citizen?

"A   You mean, you're referring to, now, after he got away from me after the church basketball, or after school?

"Q   Well, either one.

"A   As a citizen of Coburg, and the fact that he lived there, yes.

"Q   Did you know about the difficulty that he'd had before this, as far as the law was concerned?

"MR. GARDNER: Your Honor, again I would object, and make the same motion for a mistrial. I believe it has no part in this case.

"THE COURT: Overruled, motion denied.

"THE WITNESS: Would you re-state the question?

"Q (By Mr. Cobb) Did you know of the difficulty that he had with the law just before this?
"A Only from a rumor standpoint."

The plaintiff also called Mrs. Williamson, the decedent's mother, as a witness. She testified as to decedent's good health, his willingness and ability to work, and his general moral characteristics. Thereafter, the record shows the following:

"Q At the time that this accident occurred, or shortly prior to that, probably a month or so, Larry apparently had some difficulty with the law, isn't this correct?

"MR. GARDNER: I'd object to that question, Your Honor. I think it's impertinent, improper, and immaterial, and irrelevant to this proceeding.

"THE COURT: Overruled. You may answer.
"A What was the question again?

"Q I said, at just a month or so prior to this, Larry had had some difficulty with the law, isn't this right?
"A Yes. Yes."

She was further asked on cross-examination:

"Q Mrs. Williamson, I'm going to ask you one other question. I didn't ask you directly, but I want to ask you with respect to this crime. Was this a conviction of petty larceny?
"A (Pause)

"Q Was this your recollection?

"A I don't know whether it was petty larceny. It was for one gallon of gas.

"Q It was a conviction, is this correct?

"A It was something he pleaded guilty to."

The record further shows that the decedent Williamson was charged by a complaint in the District Court for Lane County for petty larceny in the stealing of "personal property of another, to wit, a gallon of gasoline, the property of James Edward Detering * * *." Mr. Detering was at that the time the employer of decedent Williamson.

The character of decedent Williamson was a material issue, for the jury's consideration, in plaintiff's proof of damages. McCormick, Hornbook Series, 323-24, Evidence § 154, discusses the problem by stating:

> "* * * [W]hen such character-trait has been put in issue by the pleadings, the fact of character must of course be open to proof, and the courts have usually held that it may be proved by evidence of specific acts. While this is the method most likely to create prejudice and hostility, it is also the most decisive revelation of character, which is here the center of inquiry * * *.
>
> "* * * * *
>
> "* * * The fact that specific acts may be enquired into upon cross-examination, and thus the trier's attention be unduly distracted, is hardly an objection since the door has already been opened to specific acts as evidence of character in issue * * *."

While varied results have been reached by different states in cases involving the admissibility, in an action to recover for the wrongful death of a minor, of evidence concerning criminal offenses, it would ap-

pear that the majority of states allow the admission of such evidence on cross-examination under the circumstances existing in the case at bar. 99 ALR2d Anno: Evidence-Death-Decedent's Qualities, 972, 999.

■ In a wrongful death action, once the plaintiff has produced a witness to testify as to the decedent's good moral characteristics, whether it be by evidence of specific acts or by testimony in the form of opinion evidence, then it is proper to cross-examine such witness as to his knowledge of specific acts relating to decedent's character, subject to the examining party being able to offer proof of the specific acts that relate to the cross-examination.

We find the court did not err in this respect.

■ Two of plaintiff's assignments of error contend that the court erred in refusing to grant plaintiff's motion for a new trial. The grounds for the motion for new trial stated that the court admitted certain evidence over plaintiff's objection. This court has repeatedly held that denial of a motion for a new trial based upon alleged error committed at the time of trial, of which the appellant had knowledge at the time, may not be assigned as error on appeal. *Paul v. McCudden*, 256 Or 143, 471 P2d 437 (1970); *Clarizo v. Spada Distributing Co., Inc.*, 231 Or 516, 373 P2d 689 (1962); *Wills v. Petros*, 225 Or 122, 134, 357 P2d 394 (1960).

The judgment is affirmed.