## Pollack v. Southern Railway in Kentucky.

(Decided May 31, 1927.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1.  Carriers—Conflicting evidence as to care exercised by shipper in loading and bracing heavy machinery in freight car held for jury, in suit against railroad for damages thereto.

2.  New Trial.—Evidence of misconduct of jury, coming solely from members thereof, in that in suit against railroad for damages a juror, a railroad employee, investigated, during recess, personal records in his employer's office, and told other jurors his findings before they reconvened, would not be received to impeach the verdict.

3.  New Trial.—The rule that verdict of a jury may not be impeached by the testimony of one of its members, relating to misconduct on the part of himself or any of his fellow jurors, applies to misconduct both within and without jury room.

THOMAS C. MAPOTHER for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellant, Nathan Pollack, instituted this action in the Jefferson circuit court against appellee, Southern Railway Company in Kentucky, to recover damages to a shipment of second-hand machinery handled by it.

Appellee's defense was that the machinery, a car lot shipment, was loaded by appellant, and that the damage, if any, was occasioned by the negligent manner in which it was loaded. Upon the trial below, the jury returned a verdict in favor of appellee, and appellant has appealed.

It is urged for appellant, first, that the verdict of the jury is flagrantly against the evidence, and that the judgment should he reversed for that reason. The court finds itself unable to sustain this contention. The issue as to whether the damage to the shipment of machinery was the result of appellee's handling of the shipment or appellant's negligent manner of loading it was submitted to the jury by instructions not complained of. The principles of law governing this question were fully written in I. C. R. R. Co. v. Rogers & Thomas, 162 Ky. 535, 172 S. W. 948, L. R. A. 1915C, 1220, Ann. Cas. 1916E, 1201.

The evidence for appellant tended to establish that this car of machinery loaded at Midway, Ky., and transported by appellee to Louisville, Ky., though it consisted of used machinery was in good condition and properly loaded. Several witnesses for appellant testified that when the car was entered and examined after reaching its destination the braces placed to hold the machinery in place in transit had been torn loose, and that there were enough timbers in the car to indicate that it had been properly braced. A son of appellant, who superintended loading the car, testified fully as to the way in which it was loaded and braced. His testimony was full and explicit, and to the effect that the car had been properly loaded and that the damage to the machinery could not have resulted from improper loading.

The shipment in part consisted of a number of manifold steam radiators, which, from their description found in evidence, as near as can be understood, were approximately 8 feet wide and 8 feet high, and weighed approximately 1,200 pounds each. These were loaded in one end of the car. Their build and weight made them top-heavy, and while in transit they all appear to have toppled over. The damage to them complained of appears to have resulted from so doing and to the other machinery from their toppling over on it. The carpenter who was employed by appellant to place the timbers with which this shipment of machinery was braced testified for appellee. He was asked, "Did you put any bracing up by the radiators?" and answered, "About one; about one on the

floor and one about half or two-thirds of the way up, nailed to each side of the car; that was 2x4 or 3x4, I am not sure which." One of the witnesses for appellant, who examined the car of machinery after its delivery in Louisville, in response to a question as to whether anything about the car indicated whether it had been properly or been improperly loaded, responded:

> "I couldn't tell anything about it from the appearance whether it was packed properly or not; all of the bracings were down; some of them were entirely down; some of them were only nailed at one end."

It appears then that only two witnesses who were present when this car of machinery was loaded testified as to how it was placed and braced for shipment. The testimony of appellant's son appears to make a first-class case for him that the machinery was properly loaded and braced. The testimony of the carpenter who helped to load the car and who placed the braces to hold this large, weighty, and top-heavy machinery in place would seem to establish that it was not properly braced for shipment. The testimony of the witnesses who inspected the car after its arrival in Louisville necessarily is more or less speculative and conjectural as to whether the damage to the machinery was caused by improper handling of the car by appellee or by improper loading or bracing of the machinery by appellant. The evidence clearly made it a case for the jury under the principles announced in I. C. R. R. Co. v. Thomas, etc., supra, and the verdict of the jury returned under instructions which properly submitted the issue cannot be said to be flagrantly against the evidence.

Appellant insists that the judgment should be reversed because of irregularity and misconduct of the jury or one of its members. The evidence was concluded late in the afternoon of the first day of the trial. When the court was about to require the arguments to be made before adjournment, some member of the jury requested that the arguments be deferred until the following morning. One member of the jury was an employee of the Louisville & Nashville Railroad Company, and had employment in the department of that company which kept the records of car movements over any portion of that railroad's tracks or terminals in the city of Louisville, Ky. Appellant, Pollack, while testifying, in describing the

damage done to the car of machinery handled by appellee, among other things, stated that the car in which the machinery was shipped "was bursted out on each side." Before returning for jury duty the second morning of the trial, the member of the jury, who was employed by the Louisville & Nashville Railroad Company, went to his office and looked up its record and ascertained that the car in which the shipment of machinery was handled which was delivered to appellant, Pollack, on one of the Louisville & Nashville Railroad Company's spur tracks, after being unloaded of the machinery, was placed immediately by the Louisville & Nashville Railroad Company at the disposal of another shipper, and was loaded and shipped out over its road without being repaired. These facts so ascertained were disclosed by him to other members of the jury before court convened, and doubtless played considerable part in leading the jury to the verdict returned. All of this testimony relative to this misconduct upon the part of jurors comes from members of the jury, and we have raised again the old question whether the verdict of the jury may be impeached by the testimony of the jurors who rendered it. This court from its organization has adhered to the rule that the evidence of jurors may not be received either to prove misconduct of themselves or of any of their fellow jurors. The rule is written, in other words, frequently that a verdict cannot be explained or impeached by the affidavits or other sworn statements of jurors. See Taylor v. Giger, Hardin (3 Ky) 586; Vance v. Haslett, 4 Bibb. (7 Ky.) 191; Cain v. Cain, 1 B. Mon. (40 Ky.) 213; Luttrell v. Maysville, etc., 18 B. Mon (57 Ky.) 291; Louisville Railway Co. v. Hallahan (Ky.) 119 S. W. 200; Rager v. L. & N. R. R. Co., 139 Ky. 760, 127 S. W. 155; L. & E. Railway Co. v. Crawford, 155 Ky. 723, 160 S. W. 267; and Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164.

Appellant insists, however, that the rule prevailing in this jurisdiction under the cases announcing it relates only to misconduct of jurors while in the jury room engaged in consideration of the verdict, and does not extend to misconduct occurring outside the jury room. He insists, therefore, that, as the misconduct complained of here occurred outside the jury room, this court should follow the Supreme Court of Wisconsin, which has held, in Peppercorn v. Black River Falls, 89 Wis. 38, 61 N. W. 79, 46 Am. St. Rep. 818, and McBean v. State, 83 Wis.

206, 53 N. W. 497, that the evidence of jurors relating to conduct of a juror or a third person outside of the jury room may be received to impeach the verdict. In some of the states a distinction seems to have been made between misconduct of jurors occurring within and without the jury room. In some jurisdictions, as in the cases above cited from Wisconsin, the view has been taken that the verdict of a jury may be impeached by the testimony of jurors provided the testimony relates to misconduct occurring outside the jury room. In other jurisdictions, where a distinction has been drawn between misconduct occurring within and without the jury room the other view has been taken; that is, that the testimony of the juror may not be received to impeach the verdict, regardless of whether it relates to improper conduct within or without the jury room. See cases cited in note appearing in 31 L. R. A. (N. S.) page 933. In yet other jurisdictions the question is treated without regard to the distinction between misconduct occurring within or without the jury room, and regardless of where it occurs the rule is adhered to that the verdict of a jury may not be impeached by the testimony of one of its members relating to misconduct upon the part of himself or any of his fellow jurors. That seems to be the rule prevailing in this jurisdiction, as no distinction appears to have been drawn between misconduct within and without the jury room.

In Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164, one of the grounds for reversal was misconduct upon the part of the jury, and from the opinion it appears that the affidavits of each of the jurors were filed. The alleged misconduct consisted of the jury separating after they had been put in charge of an officer and some of them being biased and influenced by the friends of appellee by the use of whisky and other improper agencies. All of this alleged misconduct occurred outside of the jury room. It was said in that opinion:

> "It is a very old rule, in this jurisdiction, that the affidavit of a juror cannot be received, either to prove misconduct of himself or any one of his fellow jurors."

It was further said:

> "It follows that the affidavits of the twelve jurors on file cannot be considered, in so far as it is

proposed to impeach their verdict, by proof of the misbehavior or misconduct of the jurors themselves, or of their fellow jurors."

While the application of this rule may in instances such as the one now before us work a hardship, yet experience has taught that the safer, better rule is for the courts to close their ears to jurors, who, following a verdict, consent to offer testimony tending to impeach the verdict they have rendered. The reasons upon which the rule is founded have been written in many of the cases herein cited, and need not be here repeated. The evidence of misconduct upon the part of the jurors came solely from members of the jury which rendered the verdict herein, and, for the reason indicated, that evidence cannot be received by the court to impeach the verdict, the foundation of the judgment sought to be reversed by this appeal. This court concludes that the trial court properly overruled appellant's motion for a new trial upon the ground of improper conduct upon the part of the jury, and that the judgment of the trial court must be affirmed.

Judgment affirmed.