James R. VanHOOSE, Appellant,

v.

Anne B. BRYANT et al., Appellees.

William FINLEY, Administrator of the
Estate of Ruth Collier Finley,
Deceased, Appellant,

v.

Anne B. BRYANT et al., Appellees.

Court of Appeals of Kentucky.

Dec. 18, 1964.

Rehearings Denied and Opinion Modified
May 14, 1965.

E. Durward Weldon, Georgetown, Brown, Tooms & Helton, London, for appellant James R. VanHoose.

G. H. Eversole, Hamm, Taylor & Milby, London, for appellant William Finley, Adm'r of Estate of Ruth Collier Finley, deceased.

Rucker Todd, John T. Bondurant, Louisville, J. Milton Luker, London, for appellees Anne B. Bryant and Britain H. Bryant.

Ray C. Lewis, William J. Weaver, London, for appellee Robert Smith.

STEWART, Judge.

Robert Smith brought an action against William Finley, individually and as administrator of his wife's (Ruth Collier Finley's) estate, referred to herein as "Finley," and against James R. VanHoose. Finley cross-claimed against VanHoose and the latter counterclaimed against Finley. In a separate action Anne B. Bryant and Britain H. Bryant filed suit against VanHoose and Finley. This litigation developed from a two-car collision. These cases were tried together and have been consolidated in this appeal.

The jury verdict found VanHoose and William Finley, as administrator of Ruth Collier Finley's estate, equally liable and gave each of the three plaintiffs below $8000, "plus expenses." The trial judge determined these two parties were jointly and severally liable; he "corrected" the verdict on his own initiative and entered judgment against them by awarding Smith, $8316.14, Anne B. Bryant $8856.45, and Britain H. Bryant, $9480.61. He dismissed this case as to William Finley, individually, and he also dismissed the cross-claim of Finley against VanHoose and the counterclaim of the latter against Finley. It is from this judgment that VanHoose and William Finley, as administrator aforesaid, appeal.

As we are reversing the judgment for reasons shown hereinafter and as there may be another trial of these actions, two questions are raised that should be resolved, based upon the record before us. They are:

Was either Finley or VanHoose entitled to a directed verdict acquitting him of any negligence?

Were the instructions given by the trial court erroneous? We reach this second question because our answer to the first is in the negative.

This accident occurred around 7:25 p. m. on August 20, 1961, at a time when it was almost dark and when it was drizzling rain. VanHoose was driving his car northwardly on Highway No. 229 toward London. The highway is of asphalt or blacktop construction, affording one lane of traffic in each direction. He had three passengers in his car: Warren VanHoose, seated in front on the right side; Anne B. Bryant, seated in front in the middle; and Britain H. Bryant, lying down in the back seat. Ruth Collier Finley was operating a car owned by her and her husband southwardly toward Barbourville. Her only passenger was Robert Smith, an acquaintance, whom she was taking to obtain some gasoline at Hayner Mills' store, which is situated a short distance from where she had picked him up. The store is located on the east side of the highway; the two cars met head on while she was enroute to this store. Ruth Collier Finley was killed almost instantly and the others were injured in various degrees of severity.

There were four eyewitnesses, James R. VanHoose, Warren VanHoose, Green Callebs and James Willard Parmon, who actually saw the collision and testified to the course the respective vehicles traveled, with reference to the center of the highway, before the impact. Each of these persons stated that the cars approached each other in a normal manner until they were a short distance apart, and then the Finley car swerved over in to VanHoose's lane and struck his car. VanHoose also

said that, shortly before the mishap, he had come over the top of a hill and had passed another car. It appears established that the VanHoose car was traveling 40 to 50 miles per hour at the time and it did not slacken its speed. The two Bryants in the VanHoose car testified they were asleep and, for this reason, knew nothing concerning what happened before the cars ran together.

Smith testified Ruth Collier Finley on the occasion of the accident was operating her car at a rate of speed of between 25 and 30 miles per hour. He was riding in the front seat. Immediately before the collision he saw two cars, running side by side in both traffic lanes with their headlights on and coming toward the Finley car. When they were approximately four or five car lengths away, he cried: "Lord, have mercy! Look out!" He must have fainted because he testified he remembered nothing thereafter until the following Wednesday. He did recall, however, that the Finley car was on its side of the highway before he lost consciousness.

Houston Biddle, a witness called in behalf of Smith, testified that on the day of the accident he operated a store on the west side of the highway, 300 to 450 feet south of the point of collision of the two cars. According to his testimony, just before the cars met, he was standing in the doorway of his store, and he saw the VanHoose car proceeding northwardly. At that time this car was in the southbound lane traveling beside another car it was in the act of passing. He did not witness the collision of the two cars but looked after hearing the noise of their contact and saw them rising up in the air. He could not say in which portion of the highway the cars were when they ran into each other. He immediately went to the scene of the wreck and observed some glass in the middle of the highway.

A state trooper, Albert Miller, called as a witness by VanHoose, testified he arrived at the site of the accident sixteen minutes after it occurred. According to his testimony, all the debris and glass were in Van-Hoose's traffic lane. He also testified that he talked with Smith at the hospital in London that same night; that Smith was then under sedation and he "couldn't understand him," as he was able to say only "two or three words;" and that Smith told him the Finley car, when it met the other car coming toward it, "cut over into the other lane of traffic, he didn't know why." Smith later stated under oath he did not remember making any statement to the state trooper while he was at the hospital.

Upon the basis of the foregoing evidence did the trial court correctly refuse to direct a verdict for Finley or VanHoose? We believe the issue as to who was responsible for the accident was for the jury to determine.

■ In Mahaffey v. Jones, Ky., 345 S.W. 2d 379, this Court said: "It is a familiar rule that a motion for a directed verdict admits the truth of the evidence of the party against whom the motion is directed and all reasonable inferences which may be drawn from it as well." The question of negligence becomes one of law for the trial court only where there is no controversy or conflict, and only one conclusion may be drawn by reasonable minds. Adams v. Parsons, Ky., 313 S.W.2d 426; Wathen v. Mackey, 300 Ky. 115, 187 S.W. 2d 1000; and Hogge v. Anchor Motor Freight, Inc., of Delaware, 277 Ky. 460, 126 S.W.2d 877.

■ Smith testified that very shortly before the accident he saw two cars approaching, side by side, and one of these cars was coming toward the Finley car in its lane. Both cars were going fast and continued traveling on both sides of the highway. When they were some four or five car lengths away, he shouted a warning to Mrs. Finley, passed out, and could not remember anything else that occurred prior to the collision. He did not identify the car in the Finley traffic lane. Houston Biddle reinforced Smith's testimony by placing the

VanHoose car in the southbound lane, or on the Finley side, of the highway, while the VanHoose car was at most some 450 feet from the point of impact. If Van-Hoose's rate of speed, which is not in dispute, was 40 to 50 miles per hour, it would take only a matter of seconds to cover the 450 feet, and one could believe he might have encountered difficulty in getting over in his right of way before the cars made contact.

So, taking the evidence of Smith and Biddle together, the jury, which found the drivers equally at fault, could have reasonably inferred that the car Smith saw coming toward the Finley car in the latter's lane was the VanHoose car. The jury could also have concluded from Smith's evidence that the VanHoose car was not entirely on its side before the cars met.

Both appellants objected to certain instructions given by the trial court. Van-Hoose specifically argues that the evidence introduced did not warrant telling the jury: (1) That it was the duty of VanHoose, in passing another vehicle, "not to drive to the left of the center of the highway within 100 feet of an intersection;" (2) that he should "drive at a rate of speed not in excess of what should be reasonably safe" under the conditions of travel prevailing at the time; and (3) that it was his further duty not to overtake and pass another vehicle "unless he could return to the right-hand side of the highway before coming within 100 feet" of an oncoming vehicle. In addition, he contends "instruction No. 15," a so-called "sudden emergency" instruction, was not authorized.

■ We believe the trial court erred in giving instructions (1) and (2). We are not holding that the submission of these points constitute a reversible error; we are taking the position they should not be given at another trial, if one is had. The first of these relates to passing near the intersecting Hoppertown Road on VanHoose's right as he drove northwardly. The Finley car was not entering or leaving Highway No. 229 at its intersection with the above road; it was traveling straight ahead on the highway, and the cars met 102 feet before the Finley car reached the Hoppertown Road where it intersects the highway. Furthermore, there is no evidence whatsoever that any traffic was on, or even near, the intersecting side road and, in consequence, no hazard could have arisen at this point as the two cars drew near each other beyond it. We might add that we know of no provision of law, nor have we been cited any, which supports the giving of the instruction in accordance with the language used.

As regards instruction (2), with reference to speed, there is no evidence that the VanHoose car was exceeding the lawful limit in effect at the time and place of the accident. Neither is it shown that the speed of either vehicle was the proximate cause of the accident. The case of Brown v. Crumpton, Ky., 252 S.W.2d 670, is very close to the instant case on the facts. There a truck, traveling at a rate of speed of 50 miles per hour, which was within the lawful limit, collided with an oncoming car, and the sole issue raised was whether the truck was in the car's lane of traffic when the two vehicles met. The jury was told to find whether the truck's speed was a causative factor in connection with the accident. This Court, reversing because that instruction was given, said: "Excessive speed of an automobile does not lead to liability unless it was the proximate cause of the injury, or, as a matter of defense, a contributing cause. * * * Similarly, even though the truck was on its wrong side, its speed could not have been the proximate cause of the collision * * *."

■ Coming now to a consideration of the duty imposed upon VanHoose by instruction (3), and the "sudden emergency" instruction which was submitted at the instance of Finley, we are of the opinion that the jury was properly allowed to consider these two issues. When it is recalled that Smith testified two cars were bearing down

upon the Finley car, one in each lane; that the one in the Finley lane was four or five car lengths away when he lost consciousness; and that, according to Houston Biddle's testimony, the VanHoose car was passing another car on Finley's side of the road when he saw it, shortly before the accident—this evidence certainly created a question of whether the provisions of KRS 189.340(3) were violated by VanHoose.

Also, a jury could find these same facts generated an unexpected situation which caused the driver of the Finley car to turn involuntarily over onto VanHoose's side of the highway when suddenly confronted by it on her side. Smith's testimony intimated she may have done this when the accident appeared imminent. It was for the jury to say whether, under the particular circumstances, the course pursued by Mrs. Finley was reasonable. See Stanley's Instructions to Juries, Vol. 1, sec. 139a, p. 256.

Finley contends the instructions as given were misleading, complex, and confusing, because the wording of some instructions referred the jurors to other instructions. Reference from one instruction to another is often required in order to best submit to the jury various questions for their decision. The number of parties to this litigation and the presence of counterclaims and cross-claims produced numerous factual issues for the jury to decide. Of necessity the instructions had to be somewhat lengthy and a bit complex, but we do not find them misleading or confusing. Finley also states that no instructions were given for findings upon the part of the jury on the cross-claim and counterclaim, but obviously "Instruction No. 11–1" was overlooked. Complaint is also made that the instructions failed to require the drivers to operate their respective cars in a careful and prudent manner. However, "Instruction No. 2" says this in substance.

■ Finley offered an instruction on joint enterprise, so that the negligence of VanHoose could be imputed to the Bryants, thus precluding any recovery by them against Finley. Before such an instruction is justified it must be shown that the passenger or passengers had some right, express or implied, to control, manage or direct the movement of the car. See Wright v. Kinslow, Ky., 264 S.W.2d 673, and McCoy v. Carter, Ky., 323 S.W.2d 210. The proof does not establish that the Bryants had any of the rights mentioned above.

Finley also requested the trial court to instruct that if the Bryants knew or should have known that VanHoose was drinking while operating the automobile in which they were riding, they would be guilty of contributory negligence. In Hendricks v. Garst, 314 Ky. 49, 234 S.W.2d 160, this Court held that testimony quite similar to that relied upon by Finley for the giving of this instruction was not sufficient to warrant submission to the jury of the question of intoxication of the driver of the automobile.

■ However, the judgment must be reversed for the reason that one of the jurors, Mrs. J. L. Buchanan, was guilty of misconduct. The facts concerning this point are: The jury returned one verdict on Saturday, November 10th. It was so inconsistent with the instructions and the evidence that the trial judge took the case from the jury and dismissed them until Monday, November 12th, stating he would resubmit the case on the latter date and admonishing them to talk to no one, or permit anyone to talk to them, about the case. On Sunday, November 11th, Mrs. Buchanan, accompanied by her husband, drove to the scene of the accident. Her husband and two attorneys for Finley had gone to this site some two weeks before the trial and made some measurements. On Monday morning she told one other juror about her trip. Mrs. Buchanan wanted to see where the roads and the stores were located. Mr. Buchanan pointed out to her a place where he and the two attorneys for Finley had previously done some measuring, and also directed her attention to a road Ruth Collier Finley had turned off before the accident.

The foregoing facts were brought out on the motion for a new trial filed on behalf of Finley. A hearing on the misconduct question was held at which Mrs. Buchanan, her husband and Nora Mays testified. The latter was the other member of the jury who was informed by Mrs. Buchanan on Monday of her visit to the locale of the accident. The Bryants objected to the reception by the trial judge of any testimony from any member of the jury which tended to impeach the verdict. It is unclear from the record how the circuit court ruled on the objection. Be that as it may, the testimony at the hearing was taken down and is a part of the record.

We are aware of the rule laid down in Pollack v. Southern Ry. Co. in Kentucky, 220 Ky. 302, 295 S.W. 150, on the general proposition that the evidence of jurors may not be received either to prove the misconduct of themselves or of their fellow jurors, "occurring within or without the jury room." The facts in the case at bar were elicited, not alone from Mrs. Buchanan and Nora Mays, both of whom were jurors in this case, but from Mrs. Buchanan's husband as well. Therefore, we have the statements of a person who was not on the jury, with the result that the evidence introduced concerning Mrs. Buchanan's misconduct may be considered. Furthermore, there is no contradiction as to Mrs. Buchanan's activity. Thus the instant case is factually similar to Brock v. Smith, Ky., 268 S.W.2d 947, where a woman juror, accompanied by her husband, made an unauthorized inspection of the place where an automobile accident had occurred.

This Court has repeatedly condemned the practice resorted to by Mrs. Buchanan, Brock v. Smith, supra, being one of the latest cases to do so. In 39 Am.Jur., New Trial, sec. 78, p. 92, it was said: "* * * Even though the action of a juror is casual, natural, and unsurreptitious, and there is no reason to believe that he intended improperly to affect his own judgment or to influence that of his fellow jurors, a new trial may nevertheless be granted where there seems to be fair reason for supposing that these consequences resulted."

The act of Mrs. Buchanan in making her private investigation of the locus in quo takes on a very special color when the fact is established that her husband, who was present with her, had some interest, which he did not explain, in the Finley side of the case at bar. It will be recalled he had gone previously to the wreck site with two of Finley's attorneys to help them take measurements. Under the circumstances, it is strongly indicated Mr. Buchanan may have had some peculiar feeling about the outcome of this case, which feeling we cannot help but presume he communicated to his wife.

We are of the opinion the unauthorized visit of Mrs. Buchanan to the site of the accident, under the facts presented, definitely influenced her view of the case and may have affected the result of the verdict. It was pointed out in Brock v. Smith, supra, that "* * * it is important not only that every litigant have a fair trial, but also that he have no reason to believe he did not have a fair trial."

Other errors are assigned that raise questions we do not believe will recur in the event of a retrial of this case and, for this reason, we do not deem it necessary to extend this opinion by discussing them.

Wherefore, the judgment is reversed and the case is remanded for proceedings consistent with this opinion.