Jean CRAWFORD, Appellant

v.

MARSHALL EMERGENCY SER-
VICES ASSOCIATES, PSC; and
Mark Spanier, M.D., Appellees.

No. 2011–CA–001750–MR.

Court of Appeals of Kentucky.

June 14, 2013.

Discretionary Review Denied by Supreme
Court June 11, 2014.

Larry B. Franklin, Jennifer M. Barbour, Louisville, KY, for appellant.

Clayton L. Robinson, Adam W. Havens, Lexington, KY, for appellees.

Before ACREE, Chief Judge; TAYLOR and MOORE, Judges.

*OPINION*

MOORE, Judge:

Jean Crawford appeals the decision of the Boyle Circuit Court to deny her a new trial regarding her medical malpractice claims against appellees, Marshall Emergency Services Associates, PSC, and Dr. Mark Spanier. After careful review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Jean Crawford filed a medical malpractice action in Boyle Circuit Court against Dr. Spanier and Marshall Emergency Services. Following a trial that lasted several days, a jury rendered a verdict in favor of Dr. Spanier and Marshall Emergency Services. Before the circuit court entered judgment consistent with the jury's verdict, Crawford filed a motion asking the circuit court for leave to elicit testimony from the jurors post-verdict. In relevant part, her motion stated:

On Friday, January 28, 2011, at approximately 4:35 p.m., the jury assigned to this [case] was sent to deliberate. At approximately 5:17 p.m., the foreman notified the bailiff that a verdict had been reached. A verdict in favor of Defendant Mark Spanier, M.D. was rendered, with two jurors abstaining from voting with the majority. As the jury pool was exiting the courtroom after dismissal by this Court, Plaintiff Jean Crawford approached the two jurors who had not signed the verdict in favor of Defendant Spanier to thank them for their support of her case. At that time, one juror indicated to Plaintiff that the jury had refused to deliberate the case and was in a hurry to get home.

Since that time, four separate jurors have either been contacted by or made

contact with Plaintiff or her family/friends. Those jurors have reportedly indicated that the jury was interested in getting home as soon as possible, that some jurors had expressed opinions about which party would be victorious from the outset of the trial, and that the jurors had been discussing the case amongst themselves prior to deliberations. Based upon this information, Plaintiff's Counsel seeks leave of Court to interview four jurors, including the alternate who did not participate in deliberations. Since the jurors are members of a larger pool that is slated to serve until May 1st, 2011, Plaintiff seeks permission from this Court prior to contacting the jurors regarding this matter. Since this matter would obviously play a substantial role in any motion for a new trial, Plaintiff's Counsel would ask that this Court delay entering any Judgment in this case so that Plaintiff would not be prejudiced by the inability to obtain evidence in support of said motion.

The circuit court granted Crawford leave to interview the jurors over the objections of the appellees, but only permitted Crawford to ask the jurors the following questions:

1) At any point during the trial, were you aware of any juror who made statements to the effect that they intentionally did not respond truthfully to the judge or attorneys during the jury selection process? If so, could you identify the juror and the statements made?

2) During the trial, were you aware of any juror who was approached by or had contact with any person or group who attempted the [sic] influence the outcome of the jury's decision? If so, could you identify the juror?

3) Did you hear any jury member indicate that he or she had obtained information from a source outside of the evidence and testimony presented at trial? If so, could you identify the juror?

4) During deliberations, did any juror pressure, coerce, threaten, menace, or intimidate another juror into voting for a particular party? If so, could you identify the juror?

Based upon these questions, Crawford sought affidavits from the two dissenting jurors (Betty Jean Elliott and Karen Miller) and one alternate juror (Humphrey Ballou). Miller and Ballou answered each of these questions in the negative. Elliott, however, provided detailed answers which will be discussed more fully below in our analysis. Thereafter, Crawford notified the circuit court that she had completed interviewing the jurors and that she was ready for the circuit court to enter its judgment consistent with the jury's verdict. After the circuit court did so, Crawford then filed a motion for a new trial based upon Elliott's affidavit, an additional affidavit she obtained from her husband, Tony Griffin, and a theory of either juror misconduct or irregularity in the jury's proceedings.

We will discuss the substance of Crawford's arguments below; suffice it to say, however, that the circuit court rejected them and denied her motion. This appeal followed.

## STANDARD OF REVIEW

As noted, Crawford's arguments on appeal focus solely upon alleged juror misconduct. Misconduct by the jury, or irregularity in the jury's proceedings, are grounds for a new trial. *See* Kentucky Rules of Civil Procedure (CR) 59.01(a) and (b). A trial court's denial of an Appellant's new trial motion is reviewed for abuse of discretion. *Brown v. Commonwealth*, 174 S.W.3d 421, 428 (Ky.2005) (reviewing denial of motion for new trial based on allegations of juror misconduct under abuse of

discretion standard of review). Only if the appellate court concludes that the trial court's order was clearly erroneous may it reverse. *Turfway Park Racing Ass'n v. Griffin,* 834 S.W.2d 667, 669 (Ky.1992).

## ANALYSIS

Kentucky Rules of Criminal Procedure (RCr) 10.04, which applies to both criminal and civil cases,[1] provides that "A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." This rule has been generally interpreted to mean that while juror testimony may be offered in support of a verdict, evidence provided by jurors "may not be received either to prove the misconduct of themselves or of their fellow jurors, 'occurring within or without the jury room.'" *VanHoose v. Bryant,* 389 S.W.2d 457, 462 (Ky.1965) (citing *Pollack v. Southern Ry. Co. in Kentucky,* 220 Ky. 302, 295 S.W. 150 (1927)).

This rule at times may work a hardship when juror misconduct, a valid basis for a new trial as set forth in CR 59.01, can only be shown by the testimony of a fellow juror. However, the theory is that a juror will recognize and report any misconduct to the trial court immediately and that to allow him to do it after the verdict would invite the very kind of mischief the rule was designed to obviate.

*Doyle By and Through Doyle v. Marymount Hosp., Inc.,* 762 S.W.2d 813, 815 (Ky. App.1988) (internal citations omitted).[2]

To be sure, the general rule stated in RCr 10.04 has been qualified by caselaw. In *Commonwealth v. Abnee,* 375 S.W.3d 49 (Ky.2012), the Supreme Court of Kentucky cited examples from various Federal and Kentucky cases where certain overt acts described in a juror's affidavit, transpiring during deliberations, have merited or would merit consideration in Kentucky. The examples included a situation where a juror conducted an experiment in her own home concerning a disputed issue in the trial and then related the results of her experiment to her fellow jurors during deliberations;[3] the jury's use of a dictionary during deliberations to define a legal term;[4] exposure to a record of the defendant's prior criminal history during deliberations, where that criminal history was

1. *See Turner v. Hall's Adm'x,* 252 S.W.2d 30, 34 (Ky.1952); *Barnes v. Lucas,* 249 S.W.2d 778, 779 (Ky.1952).

2. For a similar policy statement regarding the federal equivalent of RCr 10.04 (Federal Rules of Evidence 606(b)), *see Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). In *Tanner,* the United States Supreme Court held that an appellant's 6th Amendment rights did not entitle him to utilize juror testimony regarding alleged inattention and intoxication of fellow jurors during trial to demonstrate misconduct. In support, the Supreme Court noted that there are long-recognized and substantial concerns supporting the protection of jury deliberations from post-verdict examination. *Id.* at 127, 107 S.Ct. at 2751. The Court next articulated multiple aspects of the trial process that protect a defendant's Sixth Amendment interests, apart from post-verdict juror interviews, in-

cluding: (1) *voir dire;* (2) the fact that the jury is observable during the course of the trial by the court, counsel and court personnel; (3) juror observations of each other—jurors may report inappropriate behavior to the judge prior to a verdict being entered; and (4) the availability to the defendant of the opportunity to impeach a verdict by non-juror evidence of misconduct. *Id.* On the basis of these alternative mechanisms that exist to ensure an impartial and competent jury and the lack of non-juror evidence supporting the appellant's motion for post-verdict questioning of the jurors, the Court affirmed the district court's denial. *Id.*

3. *Id.* at 54 (citing *Doan v. Brigano,* 237 F.3d 722 (6th Cir.2001)).

4. *Id.* at 55 (citing *Commonwealth v. Wood,* 230 S.W.3d 331, 334 (Ky.App.2007)).

not part of the evidence presented;[5] and the reading aloud, in the jury room, of a newspaper article relevant to the case.[6]

Other examples have included instances of patently improper conduct on the part of an outside actor in a position to influence the jury. *See, e.g., Young v. State Farm Mut. Auto. Ins. Co.,* 975 S.W.2d 98 (Ky.1998) (juror affidavits considered to demonstrate bailiff denied jury's request to review depositions during deliberations and failed to communicate their request to counsel or the trial court); *Ne Camp v. Commonwealth,* 311 Ky. 676, 225 S.W.2d 109 (1949)[7] (juror affidavit considered to demonstrate that juror consulted with a priest during a recess and upon returning to deliberations about imposing the death penalty, consoled another juror, informing her that the priest told her that imposing the death penalty would not be sinful); and *Dalby v. Cook,* 434 S.W.2d 35, 37 (Ky.1968) (juror permitted to testify regarding her alleged exposure to extraneous matter, specifically, whether secretary employed by litigant's counsel had informed her prior to deliberations of whether, and in what amount, parties to the action had received insurance money).

In light of the above, Kentucky's position on juror affidavits has shifted in many ways toward the position of the Federal Courts, *i.e.,* that verifiable evidence of a jury's consideration of extraneous prejudicial information or of an outside influence being brought to bear upon the jury could be considered by courts while still respecting the finality of jury verdicts by disallowing testimony as to the unverifiable thoughts of jurors. *Abnee,* 375 S.W.3d at 54 (citing *Mattox v. United States,* 146 U.S. 140, 148–49, 13 S.Ct. 50, 36 L.Ed. 917 (1892)).

■ Turning to the case at hand, Crawford has presented two affidavits in support of her contention that she is entitled to a new trial. The first affidavit is from her husband, Tony Griffin, and it concerns a conversation that he purportedly had outside of a restaurant with juror Humphrey Ballou on the Monday following the jury's verdict. In relevant part, his affidavit states that Ballou told him at that time that "the juror who sat immediately to his left throughout the trial had not paid attention since the first day of testimony," and "that juror never took a single note and did not listen to the testimony of any witnesses." Crawford argues that this affidavit demonstrates juror misconduct and warrants a new trial. We disagree.

■ It is well settled in the Commonwealth that a "juror's inattentiveness is a form of juror misconduct, which may prejudice the defendant and require the granting of a new trial." *Ratliff v. Commonwealth,* 194 S.W.3d 258, 276 (Ky.2006). However, as a threshold matter in a case involving a sleeping or otherwise inattentive juror, the aggrieved party must present some evidence that the juror was actually asleep or otherwise inattentive and that some prejudice resulted from that fact. *Id.* Here, in violation of CR 56.05, Griffin's affidavit is not based upon his own personal knowledge, and it is simply hearsay. Hearsay is generally inadmissible as evidence in support of a motion for new trial and, therefore, Griffin's affidavit provides no basis for a new trial. *Brown v. Commonwealth,* 490 S.W.2d 731, 732 (Ky.1973). Moreover, even if one of the

---

5. *Id.* at 55.

6. *Id.* at 54–55 (citing *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892)).

7. *Ne Camp* analyzed Kentucky Criminal Code of Practice § 272, which contained language identical to RCr 10.04.

jurors on Crawford's case had provided testimony regarding this type of misconduct, it would have been inadmissible evidence of misconduct in any event. *See* RCr 10.04; *VanHoose,* 389 S.W.2d at 462; *Tanner,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), *supra,* at footnote 2 of this opinion.

█ The second affidavit is that of juror Betty Jean Elliott. In relevant part, Elliott's affidavit provides:

> [W]hen we were deliberating, the guy that was the 13th juror pulled to sit and hear the case, he made the comments that he just wanted to get this over, because he needed to go home. And the other young girl—I don't know her name—the other young girl that was sitting on jury with us—she voted for a judgment the first time around. And then that same gentleman—I don't know what his name is—made the comment that if they put a judgment against the doctor that it would ruin his life. Now, that was the comment that was made. And that, you know, we could sit there and deliberate all night, but it wasn't going to change the fact that everybody else didn't think that she deserved a judgment.

> And I didn't quite think that was right, that you make a statement to a person saying, "You know, you may as well go ahead and vote the way I'm voting." And that's when she changed her mind. And the next time around to vote— which was, like, five minutes, you know. [Juror] Karen Miller and I were saying it seemed strange that if she would have sat at the hospital—I feel if she would have been there one more hour, I think everything would have presented itself, and I think that a lot of stuff could have been prevented. I really feel that way in my heart. That's the reason I couldn't vote the other way. Because I

> really do feel like that that she should have stayed at the hospital.

> . . . .

> The only thing I know is the—the one guy—the 13th juror—made the statement that, you know, it looked to him like it was an open-and-shut case, and it was before—this was, like, in maybe the third day, before the deliberation. Now, I don't know why he would make that statement.

> . . . .

> [During deliberations, an] older lady . . . sat down the other side of Karen [Miller]. She sat in the next row down. She made the statement that if the judgment was brought against him, against the doctor, that it would ruin his practice and that our insurance—our hospital bills and doctor bills that we paid already—they would go up if we gave a judgment to him [sic]. And, I don't think that's right. This was during the deliberations . . . .

Crawford takes issue with three points in Elliott's affidavit. As outlined in her brief, those points are:

> 1) during deliberations, juror # 13 stated "if they put a judgment against the doctor that it would ruin his life";

> 2) approximately three (3) days into trial, juror # 13 stated to the other jurors that "it looked to him like it was an open-and-shut case";

> 3) an older female juror stated during deliberations that "if the judgment was brought against [Appellee Spanier], that it would ruin his practice and that our insurance—our hospital bills and doctor bills that we paid already—they would go up if we gave a judgment to him."

We will begin with the second of these points. Crawford argues that juror 13's alleged statement during the third day of trial that this was an "open-and-shut case"

demonstrates that juror 13 violated two of the duties of jurors noted in Kentucky Revised Statutes (KRS) 29A.310(1), specifically the duty to not converse with any other person on any subject of the trial, and the duty to not form or express an opinion on any subject of the trial until the case is finally submitted. Crawford emphasizes the holding of *Rice's Ex'rs v. Wyatt*, 25 Ky.L.Rptr. 1060, 76 S.W. 1087 (1903), in which the former Court of Appeals indicated that if a juror does form, express, or communicate such an opinion, this fact can serve as the basis for a new trial for the party disfavored by that opinion.[8]

The problem with Crawford's argument is that it assumes, without support, that juror 13 was referring to the strength of *Crawford's* case or that his statement was even meant to convey that impression. Elliott herself noted in her affidavit that she "[didn't] know why he would make that statement"; and, taken in isolation, this statement cannot support either side of the controversy. The only way to shed more certainty upon it would be to conduct an investigation into juror 13's unspoken mental processes or the deliberation process itself, which, of course, is forbidden with good reason:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror miscon-

duct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.... Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct.

*Tanner*, 483 U.S. at 120–121, 107 S.Ct. at 2747–2748. In short, even if juror 13 did state that "it looked to him like it was an open-and-shut case," this statement is at best grounds for harmless error because it is too vague to warrant an inference of prejudice.

Furthermore, Crawford has failed to produce any authority indicating that an affidavit from a juror would be admissible on this subject. In *Graham, Wyatt,* and the additional case cited by Crawford regarding this issue, testimony about juror statements indicating that jurors had formed an opinion of the case prior to deliberations came from non-jurors, rather than jurors. *See Graham,* 319 S.W.3d at 340 (non-juror witness named Calvin Jones); *Wyatt,* 76 S.W. at 1087 (non-juror witness named Charles Harper); *Doyle,* 762 S.W.2d at 816 (juror affidavits disregarded as evidence of juror misconduct, but affidavit of non-juror Robert Ledington considered). For that reason as well, we find that Crawford has failed to demonstrate error.

---

8. A more recent iteration of this rule is found in *Graham v. Commonwealth,* 319 S.W.3d 331 (Ky.2010), where the Kentucky Supreme Court examined whether the following brief exchange between two jurors warranted a new trial for an appellant:

> Juror Nabb: They haven't shown me anything yet new to convince me.

> Juror: They haven't shown me anything either.

The Court determined that this conversation could only be grounds for harmless error because "If anything, the conversation indicated the jurors were leaning Appellant's way." *Id.* at 340.

■ Next, we will address Crawford's arguments surrounding the alleged statements, uttered during deliberations, that if the jury "put a judgment against" the appellant Dr. Spanier "that it would ruin his life" and "that it would ruin his practice." Crawford argues that these statements are evidence that certain jurors failed to honestly answer questions on *voir dire*, specifically a number of questions dealing with the jurors' ability to be impartial, because these statements reflect bias and prejudice in Dr. Spanier's favor.[9]

We disagree for two reasons.

First, irrespective of whether these statements occurred inside or outside of the jury room, a juror's affidavit is inadmissible to prove that another juror concealed bias during *voir dire* in .order to establish a ground for a new trial. *See* RCr 10.04; *VanHoose*, 389 S.W.2d at 462; *see also Hicks v. Commonwealth*, 670 S.W.2d 837, 839 (Ky.1984), where, in the context of rejecting two juror affidavits alleging that another juror was a close personal friend of the victim's mother, the Kentucky Supreme Court stated:

> Hicks was free to establish by *competent* evidence that a juror did not truthfully answer on *voir dire* in order to conceal bias. He cannot attempt this by the evidence of another juror as to anything that occurred in the jury room. Such evidence is incompetent. *See Davis v. Com.*, 271 Ky. 180, 111 S.W.2d 640 (1937), and *Grace v. Com.*, Ky., 459 S.W.2d 143 (1970).

The authorities relied upon by Hicks, *Pennington v. Com.*, Ky., 316 S.W.2d 221 (1958), and *Tayloe v. Com.*, Ky., 335 S.W.2d 556 (1960), are not applicable. There the record or testimony other than that of a juror revealed such bias as would justify challenge for cause. Such is not the case in Hicks' situation.

Second, even if Elliott's affidavit could be considered, we disagree that the type of "bias" reflected above should serve as a basis for a new trial in any event. To quote a well-reasoned statement of law on this subject,

> [T]hat [a juror] argued that a verdict against [a defendant doctor] would ruin the doctor's reputation [is] not even colorably sufficient. The posture a juror takes for or against a party during deliberations can always be attacked as bias; no verdict would ever be safe if such a meaningless label could justify a new trial. Similarly, speculation among the jurors concerning the impact of a verdict on a party is a natural consequence of the impression that party may have made on jurors. While inappropriate in most cases (save those when, for example, punitive damages are under consideration), it is also so commonplace that it cannot be a basis for permitting a new trial.... Courts must recognize that when the jurors, as laymen, are by themselves in the jury room they may at times indulge in remarks of doubtful merit. The state must assume that the tongue's slip up in instances of that kind does not tilt the scales.

*Ertsgaard by Ertsgaard v. Beard*, 310 Or. 486, 800 P.2d 759, 766 (1990) (internal citations and quotations omitted).

---

9. From her brief, it is unclear whether Crawford is also arguing that these statements could constitute "extraneous prejudicial information" or an "outside influence," as discussed later in this opinion. We disagree that they could, however. That a physician's career might be adversely affected by a verdict finding the physician guilty of medical malpractice is not beyond the jurors' general knowledge and accumulated life experiences. Moreover, an expression of possible concern about Dr. Spanier's career by one or more of the jurors is properly categorized as an inside influence, rather than an outside one.

■ Next, we will address Crawford's arguments with respect to the alleged juror statements, as described in Elliott's affidavit, to the effect that a verdict in Crawford's favor might influence insurance rates and medical bills for the public at large. Crawford contends that these statements are admissible as verifiable evidence of a jury's consideration of extraneous prejudicial information during deliberations and, as such, should also supply a basis for a new trial.

We disagree that a comment regarding insurance rates, such as the one described above, could be properly characterized as either "extrinsic evidence" or an "outside influence." Even assuming these statements were made, they cannot be considered an "outside influence" because they were uttered by jurors during deliberations, not by an outsider attempting to influence the jury. Moreover, there is no indication from Elliott's affidavit that the jurors uttering these statements had or claimed to have had anything beyond common knowledge of insurance rates, the insurance industry, or the impact that a plaintiff's verdict in a malpractice action could have had upon either.

Crawford has directed this Court to a pair of decisions from California indicating that general statements or beliefs associated with insurance rates and medical bills, and communicated by a juror during deliberations, could warrant a new trial.[10] But, several other states addressing this particular issue and issues like it have held that such general statements cannot be considered "extrinsic evidence" or an "outside influence" and, therefore, cannot trigger any kind of exception to the general prohibition against juror testimony establishing a ground for a new trial. *See, e.g., Cater-*

*pillar Tractor Co. v. Hulvey*, 233 Va. 77, 353 S.E.2d 747, 751–52 (1987):

> One is naive who labors under the impression that jurors of today are not aware of the proliferation of lawsuits generally and damage suits against corporations specifically ... While such topics are irrelevant to the legal issues in a damage suit, we are convinced that the evil which would result from overturning verdicts based on post-trial disclosure of every irrelevant comment or discussion which occurred during jury deliberations would be more detrimental to the administration of justice than the harm which may possibly result from permitting robust, wide-ranging discussions in the jury room to proceed in an unrestrained manner.

*See also Fabacher v. Laborde, McCauley & Wilson, Anesthesiologists*, 563 So.2d 1305, 1309 (La.App. 3 Cir.1990) (affidavit from a juror which indicated that the jury seriously considered the issue of high malpractice insurance rates, and how those rates affect doctors' bills, in reaching its decision held inadmissible for purposes of granting new trial); *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Smith*, 5 Ark. App. 37, 632 S.W.2d 244, 246 (1982) ("the statement 'it's lawsuits like this that will make all our insurance premiums go up' is simply an expression of opinion on the merits of the appellees' case ... and could not properly be considered as the basis for the granting of the motion for new trial."); *King v. Bauer*, 767 S.W.2d 197, 198 (Tex. App.–Corpus Christi 1989) ("A jury discussion of insurance coverage is not an outside influence." (Citation omitted)); *Johnson v. Agoncillo*, 183 Wis.2d 143, 515 N.W.2d 508, 516 (App.1994)[11] (possible im-

---

**10.** The cases cited by Crawford are *Smith v. Covell*, 100 Cal.App.3d 947, 161 Cal.Rptr. 377

(1980), and *Tapia v. Barker*, 160 Cal.App.3d 761, 206 Cal.Rptr. 803 (1984).

**11.** *Overruled on other grounds by State v. Mes-*

pact of verdict on health care costs not considered "extraneous prejudicial information"; that money paid by an insurance company to satisfy a judgment has to come from premiums is not beyond the jurors' general knowledge and accumulated life experiences. Similarly, possible concern about the costs of health care by one or more of the jurors was not "imposed on the jury from outside by a third party," and was, therefore, not an "outside influence."); *Miller v. Breidenbach*, 520 N.W.2d 869, 872 (N.D.1994) ("General information, even misinformation, about automobile insurance that a juror mentions in the jury room, as differentiated from specific information about the case, is an internal aspect of jury deliberations, not an external effect on the jury"); *Evans v. Buffington Harbor River Boats, LLC*, 799 N.E.2d 1103, 1110 (Ind.App.2003) (alleged statement by a juror who informed the jury that Medicare or Medicaid would pay for future surgeries "is the type of knowledge gained from ordinary life experience, which may be properly brought to the jury room and relied upon"); *Walker v. Ison Transp. Services, Inc.*, 152 P.3d 894, 896 (Okla.Civ.App. Div. 1 2006):

> There is nothing to show that any of the jurors had personal knowledge of [Defendant's] insured status. The question if it had liability insurance was, at most, mere speculation on the part of the involved jurors. While jurors should restrict their deliberations to the evidence presented and the law on which they are instructed, they may properly draw inferences from the evidence and it is inevitable that in some cases inference will turn to speculation. However, this type of speculation is distinguishable from those instances where jurors independently and improperly introduce into

deliberations matters purporting to possess evidentiary probity and weight.

To the extent that Kentucky has recognized "extrinsic information" or "outside influence" as bases for allowing juror testimony, we agree with the position that these types of statements fail to qualify as either "extrinsic information" or an "outside influence." Accordingly, we find no error in the circuit court's decision to deny Crawford a new trial on this basis.

■ Crawford's remaining contention of error relates to a set of approximately 100 proposed post-verdict juror interview questions which she submitted to the circuit court for its approval prior to obtaining affidavits from the three jurors in this matter. The circuit court rejected most of these questions and condensed the questions it found acceptable into the four questions mentioned previously in this opinion. In relevant part, the only argument Crawford raises in her brief with regard to the propriety of any of her 100 proposed and rejected questions is:

> It is important to note that when each juror was approached by Counsel for the parties, the jurors were instructed that the trial court had limited the inquiry into the four questions, were shown a copy of the order and asked to read the order. For unknown reasons, Ms. Elliott went beyond the limited questions and provided information she believed relevant. Had the initial questions submitted by [Crawford] been allowed, it is very likely the jurors would have felt able to more freely discuss their experiences. Thus, the trial court erroneously placed emphasis on their silence because they were merely following the order given by the court and responding solely to the questions posed by the court. Therefore, the trial court cannot con-

*selt*, 185 Wis.2d 254, 518 N.W.2d 232 (1994).

clude that Ms. Elliott's assertions are unsupported.

Further, the trial court assumed, without any evidentiary basis, that the comments made by Juror # 13 in the first few days of trial could have been in favor of [Crawford]. This sort of assumption is precisely why additional fact-finding was required. Without the ability to inquire further of Ms. Elliott or to pull Juror # 13 or the other jurors in for additional questioning, it was impossible for [Crawford] to prove that Juror # 13's statements were in favor of one party, or that other jurors were influenced by his comments. To prevent [Crawford] from gathering such evidence and then rely on the absence of such evidence in denying the motion for a new trial was clear error by the trial court.

To summarize, Crawford asserts that her substantial rights were prejudiced because the circuit court prevented her from questioning each of the jurors more fully about the three points discussed above in Elliott's affidavit. However, we have already addressed those points at length throughout this opinion and have held that they were not proper subjects for juror affidavits. Thus, even if the circuit court did err in limiting Crawford's questions for the jurors, its error was harmless.

## CONCLUSION

For these reasons, the judgment of the Boyle Circuit Court is affirmed.

ALL CONCUR.